IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 106,645

STATE OF KANSAS,
*Appellee*,

v.

RICHARD WILLIAMS,
*Appellant*.

SYLLABUS BY THE COURT

1.

Communicating a criminal threat, as defined in K.S.A. 21-3419(a)(1), to more than one person constitutes only one offense even if it is perceived and comprehended by multiple victims; such an offense does not present multiple acts.

2.

Naming multiple individuals as potential victims of a criminal threat under K.S.A. 21-3419(a)(1) in a criminal complaint or in a jury instruction defining the elements of the crime does not present an alternative means issue.

3.

The legislature created alternative means of communicating a criminal threat when it defined two mental states in K.S.A. 21-3419(a)(1), specifically (1) an intent to terrorize another and (2) a reckless disregard of the risk of causing such terror.

Review of the judgment of the Court of Appeals in an unpublished opinion filed August 23, 2013. Appeal from Sedgwick District Court; PHILIP L. SIEVE, judge. Opinion filed February 12, 2016. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

1

*Adam Stolte*, of Kansas Appellate Defender Office, argued the cause, and *Rachel L. Pickering*, of the same office, was on the brief for appellant.

*Lesley A. Isherwood*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.:  Richard Williams, who was convicted by a jury of two counts of criminal threat, raises two issues on appeal. In each one, he argues the State failed to present sufficient evidence of an alternative means of committing the charged crimes. First, he argues the State created alternative means by alleging two possible victims in one count of criminal threat but then failed to present sufficient evidence as to one of these victims. We reject Williams' theory and hold that naming multiple victims of an alleged criminal threat does not create alternative means of committing this crime. Second, Williams argues the district court instructed the jury on alternative culpable mental states—an intent to terrorize and a reckless disregard of a risk to terrorize—and the State failed to present sufficient evidence of both means. As to this argument, we agree with Williams' contentions that (1) alternative means were alleged and instructed upon and (2) the State had the burden of providing sufficient evidence of both means. Nevertheless, we reject Williams' third and final point and conclude the State met its burden and presented sufficient evidence of both means.

We, therefore, affirm Williams' convictions for criminal threat.

FACTUAL AND PROCEDURAL BACKGROUND

Sometime in early August 2010, Williams was at the house of his on-again, off-again girlfriend, Susan Walton. Williams was intoxicated but coherent, and he told Walton he wanted to go to Oregon to get baptized by the Hell's Angels. Walton asked him what he would do about his upcoming court date with Judge Benjamin L. Burgess, and Williams said, "Fuck Judge Burgess." Williams then threatened to kill Judge Burgess, saying he would like to watch him burn in hell with Satan.

Around the middle of August 2010, Judge Burgess' assistant received a suspicious phone call. The man, who eventually identified himself as Williams (the caller I.D. showed his name as well), wanted to speak with Judge Burgess about his case. The assistant repeatedly told Williams he could not speak to the judge. Williams finally replied with aggression, "You tell him that I'll meet him any time, any place and then we'll talk."

The assistant told Judge Burgess about the phone call, and Judge Burgess immediately remembered Williams. In 2006, Judge Burgess had presided over Williams' previous case and declined to follow the plea agreement. As the judge tried to explain some sentencing options, Williams flipped him off and said, "Hey, Ben, fuck you."

About a week after the first August phone call, Williams called back and again asked to speak with Judge Burgess. Again the assistant denied him the opportunity.

One week later, an investigator from the District Attorney's office went to speak with Judge Burgess. The investigator informed him that Walton had called the police and reported the threat Williams made against Judge Burgess—the threat about killing him

3

and watching him burn in hell with Satan. After learning this information, Judge Burgess' assistant reported the phone calls from Williams to the District Attorney's office.

When Walton called the police to report Williams' threats related to Judge Burgess, she also reported that Williams had threatened her best friend Jodi Jackson after Jackson told Williams exactly why she did not like him. In response to Jackson's comments, Williams had told Walton that "I'll meet [Jackson] in any park she wants to be in, I'll spit in her face and I know people that will beat her up." Walton told Williams that she wished he would not talk about her friend like that, but Williams said he did not care. Walton expressed concern for both Judge Burgess' and Jackson's safety.

The State charged Williams with three counts of criminal threat: Count 1 for the threat he communicated to Walton and directed at Judge Burgess; Count 2 for the threat he communicated to Judge Burgess' assistant over the phone; and Count 3 for the threat he communicated to Walton and directed at Jackson.

Williams' case proceeded to a jury trial, where Williams called witnesses in his defense. The first witness testified that he overheard the phone call to Judge Burgess' office and did not think Williams' comments were a threat. Two other witnesses recounted a situation that occurred around the same time as the threatening statements; they reported seeing Williams walk around their neighborhood drunk, angry, and confused, wearing only a towel. The last of those two witnesses testified that Williams was a different person when he was drunk.

The jury found Williams guilty of Counts 1 and 3 but not guilty of Count 2. The district court later sentenced Williams to a controlling term of 17 months' imprisonment. Williams timely appealed his convictions and total sentence to the Court of Appeals.

4

On appeal, Williams first argued that insufficient evidence supported his conviction for Count 1 because there was no evidence he threatened Walton, who, along with Judge Burgess, was named in the complaint and the jury instructions as a victim. The Court of Appeals agreed the evidence was insufficient to support a threat against Walton. Nevertheless, the court determined the error in Williams' case involved a multiple acts instruction, which did not amount to reversible error. *State v. Williams*, No. 106,645, 2013 WL 4564749, at *4-6 (Kan. App. 2013) (unpublished opinion), *rev. granted in part* 299 Kan. 1274 (2014).

Williams next argued that the district court instructed the jury on Counts 1 and 3 about alternative means of committing the crimes and insufficient evidence supported each of the alternative means. The instructions provided that Williams was guilty of criminal threats if he intended to terrorize another *or* if he recklessly disregarded the risk that another would be terrorized by his statements; Williams argued the State was required to prove both mental states. On this point, the Court of Appeals agreed that Williams' case involved alternative means. However, the court affirmed the convictions, finding the evidence sufficient to support each alternative means. 2013 WL 4564749, at *7-8.

The Court of Appeals also resolved two other jury instruction issues against Williams and affirmed his convictions. 2013 WL 4564749, at *9-12.

We granted Williams' petition for review as to his two alternative means arguments, which he frames as follows: (1) Whether the district court erroneously instructed the jury regarding criminal threat as charged in Count 1 by including two intended victims, even though the evidence failed to prove a threat was made against one of the victims; and (2) whether the district court erred by instructing the jury on alternative mental states for committing threats as charged in Counts 1 and 3, even

5

though the evidence failed to prove both culpable mental states. We denied Williams' petition for review as to all other issues.

ANALYSIS

Issue 1: *Did the district court erroneously instruct the jury on criminal threat, as alleged in Count 1, by including two intended victims of Williams' threat?*

The State charged Williams in Count 1 of the amended information with "unlawfully and intentionally threaten[ing] to commit violence, communicated with the intent to terrorize another, to-wit:  Susan R. Walton or Benjamin L. Burgess." See K.S.A. 21-3419(a)(1) (criminal threat). The district court then instructed the jury that to find Williams guilty, it had to conclude:

"1. That the defendant threatened to commit violence;

"2. That such threat was communicated with the intent to terrorize Susan Walton or Benjamin Burgess or in reckless disregard of the risk of causing terror to Susan Walton or Benjamin Burgess."

Although the instruction matched the complaint, Williams argues an error occurred because there was no evidence that he intended to terrorize Walton.

At the outset, the Court of Appeals agreed there was not sufficient evidence to establish that Williams had committed the crime of criminal threat against Walton. *Williams*, 2013 WL 4564749, at *4. The State did not cross-petition for review of that issue, which means that the sufficiency of the evidence supporting that finding is not before this court. See *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 171-72, 298 P.3d 1120 (2013); Supreme Court Rule 8.03(a)(4)(c), (b)(2) (2015 Kan. Ct. R. Annot. 79-80) ("The court will not consider issues not presented or fairly included in the

6

[cross-petition]."). Consequently, we review the case on the premise that there was insufficient evidence of a threat against Walton.

Although the Court of Appeals panel agreed with Williams that the State failed to present sufficient evidence of a threat against Walton, from that point on the panel disagreed with Williams at every turn. The panel even rejected Williams' framing of his first issue—Williams had suggested in his brief before the Court of Appeals that his sufficiency challenge was an alternative means argument. But the panel saw the issue as an instructional error involving multiple acts. *Williams*, 2013 WL 4564749, at \*4-6. We begin our review with that analysis.

### 1.1. *This is not a multiple acts issue.*

The Court of Appeals, after finding insufficient evidence of the threat against Walton and reasoning that the district court had instructed the jury on multiple acts, held the instructions were erroneous because the State did not elect an act and the district court did not provide the jury with a unanimity instruction that would assure the jury agreed on one criminal act. 2013 WL 4564749, at \*4-5; see *State v. King*, 297 Kan. 955, 977, 305 P.3d 641 (2013) ("When a case involves multiple acts, the jury must be unanimous in finding which specific act constitutes the crime."); accord *State v. Castleberry*, 301 Kan. 170, 185-86, 339 P.3d 795 (2014) ("Failure to elect or instruct is error."). Nevertheless, the court affirmed Williams' conviction, concluding that Williams did not request a unanimity instruction and the error did not rise to the required level of clear error. 2013 WL 4564749, at \*6.

The threshold question when determining whether a unanimity instruction is required is to determine whether a case involves multiple acts. *King*, 297 Kan. at 980. This inquiry requires "an examination of the defendant's conduct to determine if the

7

alleged acts are separate and distinct from one another or part of a single continuous course of conduct. If the incidents in question are not legally or factually separate, there are not multiple acts." 297 Kan. at 980. A four-part test assists a court in analyzing whether conduct involves multiple acts:

> "'(1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct.'" 297 Kan. at 981.

Neither the State's charge in Count 1 nor the district court's instruction factually referenced multiple acts—both indicated Williams made one threat. Likewise, the solitary threat occurred at the same time and in the same place. There was nothing that intervened in Williams' single threat, and there could not possibly have been a fresh impulse motivating the single threat. Factually, this was not a multiple acts case.

Moreover, as a legal matter, the fact that there were two alleged victims did not convert Count 1 into a charge encompassing multiple acts. As this court has previously concluded, "we must presume that the unit of prosecution defined in K.S.A. 21-3419(a)(1) is a single communicated threat; a communicated threat constitutes only one offense even if it is perceived and comprehended by multiple victims." *King*, 297 Kan. at 975. Had the State charged Williams in multiple counts based on his single threat against multiple victims, any convictions stemming from the charges would have been multiplicitous. Williams made one threat and committed one crime; the Court of Appeals erred in identifying this case as one involving multiple acts.

Our disagreement with the Court of Appeals as to multiple acts does not necessarily mean we must reverse Williams' conviction. See *Alires v. McGehee*, 277 Kan.

398, 412, 85 P.3d 1191 (2004) (affirming the Court of Appeals' conclusion but disagreeing with its analysis). We must still resolve Williams' original argument before the Court of Appeals—and his argument in his petition for review—that the State failed to present sufficient evidence of all alleged alternative means.

1.2. *Naming two victims of a criminal threat does not state alternative means.*

Williams' alternative means contention regarding Count 1 is based on the State's allegation there were two victims of that threat—Walton and Judge Burgess—coupled with the district court's instruction to the jury that to find Williams guilty it had to conclude that he communicated a threat "with the intent to terrorize Susan Walton *or* Benjamin Burgess." (Emphasis added.) Williams claims the jury had the option to find him guilty based on two distinct means: (1) his intent to terrorize Walton or (2) his intent to terrorize Burgess.

Williams is correct that, if in fact the jury was instructed on alternative means, there must be sufficient evidence to support each of the alternative means charged in order to ensure that the verdict is unanimous as to guilt. *State v. Brown*, 295 Kan. 181, 188, 284 P.3d 977 (2012) ("[T]he . . . alternative means rule/super-sufficiency requirement 'is the only choice to ensure a criminal defendant's statutory entitlement to jury unanimity.'").We must first determine whether naming two alleged criminal threat victims creates alternative means of committing the crime.

An alternative means case arises when "a statute—and any instruction that incorporates it . . . list[s] distinct alternatives for a material element of the crime." 295 Kan. at 184. Consequently, determining whether a case involves alternative means is typically a matter of statutory construction, which is a question subject to unlimited review. 295 Kan. at 193-94. The touchstone of statutory construction is legislative intent,

9

and to divine this intent we first examine a statute's plain language to determine whether it describes alternative means by listing "alternative distinct, material elements." 295 Kan. at 193-94. The legislature typically signals its intent to create an alternative means by "separating alternatives into distinct subsections of the same statute." 295 Kan. at 196.

The relevant statutory language provides: "A criminal threat is any threat to . . . [c]ommit violence communicated with intent to terrorize *another*." (Emphasis added.) K.S.A. 21-3419(a)(1). In the definition section of the Kansas Criminal Code, the legislature defined "another" as "*a person or persons* as defined in this code other than the person whose act is claimed to be criminal." (Emphasis added.) K.S.A. 21-3110(2). Simply put, the crime can be committed by communicating a threat of violence to one person or a thousand people. Just as the number of people who hear the threat does not create a multiple act, having more than one person potentially threatened does not create alternative means.

Here, both the complaint and the instruction described the identities of the person or persons who potentially fell into that "another" category—Walton and Judge Burgess. The victims' identities did not create an additional or distinct way Williams could have committed a criminal threat—it thus did not matter whether some jurors believed Williams threatened Walton and/or Judge Burgess, as long as they agreed he threatened *another*. Under our precedent regarding alternative means, there did not need to be sufficient evidence to support a threat against each identified victim. Although a threat against "another" is a material element of criminal threat, the case-specific person who falls into that group is not. Indeed, the language upon which Williams bases his alternative means claim—the two identified victims—does not appear in the statute. That alone indicates the legislature never intended for cases like Williams' to be alternative means cases.

10

Rather than from the language of the statute, Williams' alleged alternative means argument arose from the case-specific factual circumstances—the victims' identities—described by the complaint and jury instructions. Williams fails to cite any authority supporting an alternative means argument that arises independently from statutory language.

We note that there are other arguments that could have been made in this case that seem to better fit the situation. See, *e.g.*, *United States v. Thomas*, 791 F.3d 889, 897 (8th Cir. 2015) (discussing variances in proof from crime as charged); *United States v. Allmendinger*, 706 F.3d 330, 339 (4th Cir. 2013) ("When the government's proof diverges to some degree from the indictment but does not change the crime charged in the indictment, a mere variance occurs."); *United States v. Acosta-Gallardo*, 656 F.3d 1109, 1116 (10th Cir. 2011) ("'A variance arises when the evidence adduced at trial establishes facts different from those alleged in an indictment.'"); see also *United States v. Keller*, 916 F.2d 628, 633 (11th Cir. 1990) (noting that a variance is subject to harmless error review, and the error compels reversal only if it substantially prejudiced a defendant's rights). But the parties have not raised those arguments and have thus abandoned them. We restrict our review to the arguments presented to us.

Because Williams relies on an alternative means argument but has failed to establish an alternative means violation based on the listing of victims in Count 1, we reject his first argument.

Issue 2:    *Was Williams' right to a unanimous jury verdict violated when the district court instructed the jury on alternative means to commit criminal threat based on two different mental states:  intent and recklessness?*

In his second issue, Williams raises a different alternative means argument that applies to the criminal threat charges brought in both Counts 1 and 3. He argues the jury

11

was instructed on two alternative mental states—an intent to terrorize another and a reckless disregard of the risk of causing terror—and the evidence was insufficient to support both means. Consequently, Williams claims we must reverse his convictions. Although Williams is correct that alternative means were presented in the jury instructions for Counts 1 and 3, his challenge fails because sufficient evidence supported each means.

The parties and the Court of Appeals agreed that criminal threat is an alternative means crime, at least with respect to the two mental state elements of intent to terrorize and a reckless disregard of the risk of causing terror. *Williams*, 2013 WL 4564749, at \*6. A number of other opinions from the Court of Appeals have come to the same conclusion. See *State v. Windsor*, No. 107,152, 2013 WL 1444399, at \*6 (Kan. App.), *rev. denied* 297 Kan. 1256 (2013); *State v. Brooks*, No. 105,358, 2012 WL 309075, at \*5 (Kan. App. 2012) (unpublished opinion), *rev. denied* 296 Kan. 1131 (2013); *State v. Gatlin*, No. 95,270, 2007 WL 1042134, at \*5-6 (Kan. App.) (unpublished opinion), *rev. denied* 284 Kan. 948 (2007); *State v. Alford*, No. 95,578, 2007 WL 656371, at \*3 (Kan. App.) (unpublished opinion), *rev. denied* 284 Kan. 947 (2007). Concededly, some of the opinions from the Court of Appeals predated *Brown*, which clarified the alternative means analysis to be used in Kansas. But some of these decisions apply *Brown* and hold that the differing mental state elements for criminal threat make criminal threat an alternative means crime. We agree with the Court of Appeals' post-*Brown* analysis.

2.1. *Alternative mental states create alternative means of committing a criminal threat.*

As we examine the statutory language to discern whether the legislature intended to create alternative means, one clue can be the legislature's listing of "alternative distinct, material elements," which can be differing mental states. *Brown*, 295 Kan. at 194; see *State v. Nunez*, 298 Kan. 661, 665, 316 P.3d 717 (2014). Additionally, while not

conclusive, the legislature's technical design of a statute can signal its intent to create alternative means; for instance, the separation of different means into different subsections can convey the intent to create alternative means. 298 Kan. at 665-66. Here, application of these guidelines produces conflicting results.

The legislature defined criminal threat as follows:

"(a) A criminal threat is any threat to:

(1) Commit violence communicated *with intent to terrorize another*, or to cause the evacuation of any building, place of assembly or facility of transportation, *or in reckless disregard of the risk of causing such terror* or evacuation;

(2) adulterate or contaminate any food, raw agricultural commodity, beverage, drug, animal feed, plant or public water supply; or

(3) expose any animal in this state to any contagious or infectious disease."
(Emphasis added.) K.S.A. 21-3419.

Through these provisions, the legislature described two material and distinct mental state elements for criminal threat—intent to terrorize or reckless disregard of the risk of terrorizing—which would suggest it intended to create alternative means for committing the crime. See *State v. Aguirre*, 296 Kan. 99, 109, 290 P.3d 612 (2012) ("[I]n some cases, alternative means of committing a crime can be based on alternative mental states of the defendant."); see also *State v. Ta*, 296 Kan. 230, 242, 290 P.3d 652 (2012) ("Both a criminal act, an *actus reus*, and a culpable mental state, a *mens rea*, are required for the offense to occur."). But the legislature also placed those two mental state elements into a single subsection, which, as we explained above, sometimes indicates that the legislature did not intend to establish alternative means. We have considered these and other arguments by the parties regarding legislative intent and conclude that the meaning of K.S.A. 21-3419(a)(1) is ambiguous; we cannot discern whether the legislature

13

intended to create alternative means of committing criminal threat depending on the defendant's mental state.

When faced with ambiguity about whether the legislature intended to create alternative means, this court applies the rule of lenity. The rule of lenity provides that """[a]ny reasonable doubt about the meaning [of a criminal statute] is decided in favor of anyone subjected to the criminal statute.""" *State v. Horn*, 288 Kan. 690, 693, 206 P.3d 526 (2009). Here, the rule of lenity works to overcome the ambiguity of the statute and casts the balance in favor of Williams' contention that the legislature created alternative means to commit criminal threat by listing two distinct mental state elements—intent to terrorize another and reckless disregard of the risk of terrorizing another. See *State v. Coman*, 294 Kan. 84, 97, 273 P.3d 701 (2012) ("If . . . there are two reasonable and sensible interpretations of a criminal statute, the rule of lenity requires the court to interpret its meaning in favor of the accused.").

We agree with the Court of Appeals that the legislature created alternative means when it defined two mental states in K.S.A. 21-3419(a)(1), specifically that it envisioned a defendant could be found guilty of criminal threat if he or she acted with (1) an intent to terrorize another or (2) a reckless disregard of the risk of causing such terror.

2.2. *Sufficient evidence supported each of the alternative means instructed.*

Given that the district court instructed the jury on alternative means to commit criminal threat, the State bore the burden of providing sufficient evidence to support *each* means to ensure that Williams' jury verdict was unanimous. See *Aguirre*, 296 Kan. at 103-04. The Court of Appeals concluded that sufficient evidence supported each of the means by which Williams might have committed criminal threat as alleged in Count 1 and Count 3. *Williams*, 2013 WL 4564749, at *8. We agree.

14

Turning first to Count 1, the State charged and the district court instructed the jury that Williams was guilty if he communicated a threat "with the intent to terrorize Susan Walton or Benjamin Burgess or [if he communicated a threat] in reckless disregard of the risk of causing terror to Susan Walton or Benjamin Burgess." After reviewing the record, sufficient evidence supported a conviction based on both an intentional threat and one made recklessly.

"[C]riminal threat does not require the defendant to know that his or her threat would be communicated to the person threatened," although someone must perceive and comprehend the threat. *State v. Woolverton*, 284 Kan. 59, 68-69, 159 P.3d 985 (2007); *State v. Wright*, 259 Kan. 117, 122, 911 P.2d 166 (1996). Williams told Walton he was going to kill Judge Burgess, and she later reported the threat to the police because she was worried Williams was serious. An investigator then informed Judge Burgess of the threat, and Judge Burgess did take the threat seriously. Williams and Judge Burgess had a history, which Walton knew, and Williams' threat to kill Judge Burgess was made at least in reckless disregard of the risk that Judge Burgess would find out and feel terrorized.

As to intent, Williams only communicated this specific threat to Walton—which taken by itself might be weak evidence of his intent to terrorize Judge Burgess. After all, not directly communicating the threat to Judge Burgess would be a roundabout way to intentionally threaten him.

Williams also followed up the threat he communicated to Walton by calling Judge Burgess' office multiple times and trying to meet with him; he aggressively ended the first conversation with a threatening message—Williams would meet Judge Burgess any time any place. And after Walton reported the threat on Judge Burgess' life, Judge Burgess was informed of the threat, which he took seriously because a man he sent to

15

prison was now threatening to kill him. Viewing the circumstances together, in the light most favorable to the State, the evidence showed an intent on Williams' part to terrorize Judge Burgess when he told Walton he would kill him and watch him burn in hell.

Turning to Count 3, the State charged and the district court instructed the jury that Williams was guilty if he communicated a threat "with the intent to terrorize Susan Walton or Jodi Jackson or [if he communicated a threat] in reckless disregard of the risk of causing terror to Susan Walton or Jodi Jackson." Here, too, the evidence supported a finding of both an intentional threat and one made recklessly.

Determining whether a statement was made in reckless disregard of the risk of terrorizing another includes consideration of the relationship of the individuals involved. See *State v. Cope*, 273 Kan. 642, 647, 44 P.3d 1224 (2002). One day at Walton's house, Jackson—Walton's best friend—told Williams why she did not like him. Immediately after Jackson left, Williams told Walton what he was going to do to Jackson: "I'll meet her in any park she wants to be in, I'll spit in her face and I know people that will beat her up." Williams said he did not care whether Jackson was Walton's friend. Concerned, Walton told Jackson about the threat and called the police.

Considering the evidence in the light most favorable to the State, the evidence supported a finding that Williams intended to terrorize Jackson when he made the threat, even though he communicated the threat to Walton. Williams knew Walton and Jackson were friends; and by making a threat against Jackson to Walton, the jury could reasonably infer that Williams intended for Walton to tell Jackson about the threat. This is especially true considering that Williams refused to back away from his threat when Walton asked him not to make that sort of threat against her friend. Additionally, the evidence showed Williams made the statement in reckless disregard of the risk that Walton would tell Jackson—her best friend—who would then feel terrorized from the

16

threat. Thus, sufficient evidence supported each alternative means as to Williams' conviction for Count 3.

Williams argues more generally, as he did before the Court of Appeals, that he was too drunk to form the necessary culpable mental states for either count. But this theory was tried in front of the jury: Williams presented an intoxication argument to the jury, and the district court instructed that voluntary intoxication could render Williams unable to form the intent necessary to commit the crime. The jury found voluntary intoxication inapplicable in Williams' case. *Williams*, 2013 WL 4564749, at *8. On appeal, we do not reweigh the evidence, and we assume the jury appropriately considered and rejected the instruction on voluntary intoxication. *State v. Williams*, 299 Kan. 509, 525, 324 P.3d 1078 (2014); *State v. Reid*, 286 Kan. 494, 521, 186 P.3d 713 (2008) ("A jury is presumed to follow the instructions given to it."). Thus, we conclude that sufficient evidence supported each alternative means for Williams' convictions in Count 1 and Count 3.

Because sufficient evidence supported each alternative mental state, we affirm Williams' convictions for criminal threat.

The judgment of the Court of Appeals affirming the district court is affirmed. The judgment of the district court is affirmed.