NOT DESIGNATED FOR PUBLICATION

No. 115,668

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

TROY B. MEITLER,
*Appellee*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed September 15, 2017. Appeal denied.

*Andrew R. Davidson*, assistant district attorney, *Keith Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Gregory D. Bell*, of Bell and Robinson LLC, of Hutchinson, for appellee.

Before MALONE, P.J., PIERRON and BRUNS, JJ.

MALONE, J.: Troy Meitler was charged with driving under the influence (DUI), involuntary manslaughter committed in the commission of DUI, and reckless aggravated battery arising from a motor vehicle accident on February 10, 2012. Following the State's presentation of evidence, Meitler moved for judgment of acquittal which the district court granted as to the involuntary manslaughter charge. The State voluntarily dismissed the remaining charges and brings this appeal on a question reserved by the prosecution as to the district court's grant of acquittal on the involuntary manslaughter charge. For reasons we will endeavor to explain in this opinion, we deny the State's appeal.

1

FACTUAL AND PROCEDURAL BACKGROUND

This case arises from a tragic fatality motor vehicle accident on February 10, 2012, in Reno County, Kansas. The underlying facts and procedural history of the case are set out in detail in a previous published opinion of this court related to a pretrial suppression issue. *State v. Meitler*, 51 Kan. App. 2d 308, 347 P.3d 670 (2015).

"On February 10, 2012, in Reno County, Trooper Stephen A. Morris of the Kansas Highway Patrol responded to the scene of a two-vehicle accident. Upon his investigation, Trooper Morris determined Meitler was the driver of the car who left his lane of traffic, crossed the centerline, and caused the fatality collision. Although Trooper Morris discovered no evidence of alcohol or drug impairment at that time, he also did not observe any roadway features, conditions, or debris to explain why Meitler crossed the centerline into oncoming traffic causing the collision. Meitler was flown to a Wichita hospital because of the severity of his injuries.

"Trooper Morris requested a Sedgwick County-assigned trooper go to the hospital to obtain a sample of Meitler's blood. Trooper John Maier went to the hospital. Trooper Maier was informed by the dispatcher that Meitler was involved in a fatality accident and had been deemed the at-fault driver. Trooper Maier placed a copy of the implied consent advisory on Meitler's body as he read the advisory aloud, but Meitler was unable to follow along and appeared to be unconscious. Trooper Maier asked Meitler to consent to the blood draw, and after receiving no response, marked 'yes' on the advisory. Trooper Maier then directed healthcare personnel to draw Meitler's blood. Trooper Maier took custody of the blood sample which later tested positive for the presence of methamphetamine and marijuana.

"Meitler was charged with one count each of involuntary manslaughter pursuant to K.S.A. 2011 Supp. 21-5405(a)(3), aggravated battery pursuant to K.S.A. 2011 Supp. 21-5413(b)(2)(A), and driving under the influence of alcohol or drugs pursuant to K.S.A. 2011 Supp. 8-1567(a)(4). Meitler filed a motion to suppress the results of his blood test, arguing that a fatality collision involving a driver who commits a traffic offense does not provide probable cause the driver was impaired at the time of the collision. Meitler argued to the district court that [*State v. Declerck*, 49 Kan. App. 2d 908, 317 P.3d 795, *rev. denied* 299 Kan. 1271 (2014),] controlled and, because K.S.A. 2011 Supp. 8-

2

1001(b)(2) which permitted the blood draw was unconstitutional, Meitler's blood-test results should be suppressed. See 49 Kan. App. 2d 908, Syl. ¶¶ 5-7, 317 P.3d 794 (finding K.S.A. 2011 Supp. 8-1001 [b][2] unconstitutional).

"The State countered that *Declerck* was inapplicable because, unlike Declerck who refused the blood draw, Meitler was unconscious, and pursuant to the statute had impliedly consented to the blood draw. Alternatively, the State argued that Trooper Morris' and Trooper Maier's objective and reasonable reliance on K.S.A. 2011 Supp. 8-1001(b)(2) before it was declared unconstitutional warranted applying the good-faith exception to the exclusionary rule, thus permitting the results of the blood draw to be admitted in evidence at trial. At Meitler's suppression hearing, the district court ordered the parties to submit additional briefing on whether the good-faith exception to the exclusionary rule should apply to prevent the evidence from being suppressed.

"Upon receipt of the additional briefing, the district court issued an order suppressing the results of the blood draw. First, the district court based its ruling on the fact that Trooper Morris did not have probable cause to suspect Meitler was operating or attempting to operate his vehicle under the influence of alcohol or drugs. Second, the district court found that, based upon *Declerck*, K.S.A. 2011 Supp. 8-1001(b)(2) was unconstitutional as applied to this case. Finally, the district court determined the good-faith exception to the exclusionary rule did not apply because Trooper Morris did not rely on K.S.A. 2011 Supp. 8-1001(b)(2) when compelling Meitler's blood draw." 51 Kan. App. 2d at 309-11.

The State timely filed an interlocutory appeal of the district court's suppression order. On appeal, this court reversed the district court's suppression order and held that the exclusionary rule does not apply to evidence obtained by law enforcement officers who acted in objectively reasonable reliance on K.S.A. 2011 Supp. 8-1001(b)(2) prior to the decision in *Declerck*. *Meitler*, 51 Kan. App. 2d 308, Syl. ¶ 5. Accordingly, this court remanded the case for further proceedings. 51 Kan. App. 2d at 319.

The trial began on April 5, 2016, and a jury was empaneled and sworn. The State called Trooper Morris to testify as to his observations at the accident scene. Morris testified that he did not receive any reports of erratic driving prior to the accident and

3

there were no witnesses to the accident. He did not observe anything in the road that would explain the accident. Morris was able to determine that the white pickup truck driven by Meitler that was eastbound crossed the center line into the westbound lane and collided head on with an oncoming truck. The other truck was driven by Brian Bush, who was killed in the collision, and his passenger, Annette Bush, sustained serious injuries.

Morris did not find any beer cans, liquor bottles, or drug paraphernalia in Meitler's truck. He did not detect any odor of alcohol or burnt marijuana in the truck. Moreover, he did not find any alcohol or drugs, including marijuana and methamphetamine, in the truck. He observed no physical signs or clues to indicate that Meitler was impaired by drugs or alcohol. Meitler did not admit to using drugs or alcohol, and Morris was unable to perform any testing that might determine impairment.

On cross-examination, Morris acknowledged that many factors could have caused or contributed to the accident—driver fatigue or distraction caused by the truck radio, a cell phone, or texting. When Morris was asked if there was any indication whatsoever at the conclusion of his investigation that the accident was in any way related to impairment by alcohol, he responded, "no." When he was asked whether his investigation uncovered any evidence suggesting that Meitler was under the influence of drugs to a degree that he could not safely operate his vehicle, Morris responded, "no." Morris acknowledged that the only reason he requested a blood sample from Meitler was because he had been involved in a fatality accident.

Gretchen Crow, a forensic scientist in the toxicology department with the Kansas Bureau of Investigation (KBI), testified for the State. Crow testified that her "primary duties are to analyze blood and other bodily fluids for the presence of alcohol and drugs." She stated that she had a bachelor's degree in chemistry. Moreover, she had completed 18 to 24 months' training with the KBI on blood, drug, and urine analysis. Crow testified

4

that in her career she had analyzed at least 8,000 specimens for their blood alcohol content and at least 3,000 specimens for their drug content.

Crow testified that she completed the testing of Meitler's blood and it was confirmed positive for methamphetamine and amphetamine. Later in cross-examination, Crow also indicated that Meitler's blood tested positive for cannabinoids or THC. When the State attempted to ask Crow her opinions about the effect drugs have on a person's ability to safely drive a vehicle, Meitler's counsel objected stating that Crow had "not been identified as an expert witness beyond the results of the blood test."

The State then began to lay additional foundation for Crow's testimony. Crow testified that she was a toxicologist, what it meant to be a toxicologist, and that she knew about the effects drugs have on an individual's driving. Crow specifically stated that this area was included in the training that she received as part of her employment with the KBI. Crow testified that she would review "scientific literature" in forming her opinions, including several journals. She testified that she had been qualified as an expert witness over 250 times in court regarding drug use, including four cases within the preceding month. Crow had testified "as to the effect of the drugs" in those four cases. The State asked if Crow could generally "testify to what the common effects of methamphetamine are on an individual." Crow stated:  "Yes, in regard to driving."

The State then asked the district court to qualify Crow as "an expert in the area of toxicology, including the effects of drugs . . . on an individual." After lengthy arguments by counsel in chambers, the district court ultimately stated that it believed Crow was "an expert in analysis of blood and other bodily fluids," but was "not convinced that her expertise extend[ed] to the effects [of] those substances." The parties returned to the courtroom and, over defense counsel's objection, the State was able to elicit from Crow the amount of time THC stays in an individual's system. Further, over defense counsel's

objection, the State was able to elicit from Crow the amount of time methamphetamine stays in an individual's system.

When the State began to question Crow about the effect methamphetamine has on the body, Meitler's counsel again objected and the district court sustained the objection based on its prior ruling. The State tried to establish additional foundation for Crow to testify as to the effects of methamphetamine on an individual. Crow testified that she was familiar with a study from the National Highway Traffic Safety Administration that reviewed the effects of methamphetamine on a user. Defense counsel again objected to the testimony and the judge responded: "I am standing by my previous ruling."

During cross-examination, Crow revealed that the testing performed by the KBI on Meitler's blood samples was only positive or negative for THC and methamphetamine, and the results did not reveal the amount of either drug that was in Meitler's system. Crow indicated that the test triggers positive at 10 nanograms per milliliter for THC and 50 nanograms per milliliter for methamphetamine. Crow testified that there was no scientific standard for the amount of methamphetamine or THC that would need to be in the blood for an individual to be intoxicated.

Following the State's presentation of evidence, the State moved to file an amended complaint dismissing the DUI count but clarifying that the involuntary manslaughter charge was predicated on the commission of a DUI. The district court granted the amended complaint. Meitler's counsel then made an oral motion for judgment of acquittal alleging there was a lack of evidence to prove Meitler was under the influence of drugs or a combination of drugs at the time of the accident. The prosecutor responded that the district court had prevented the State from introducing evidence about the effects drugs have on a user; however, the State believed there was sufficient evidence for the case to go to the jury.

After hearing the arguments, the district court agreed with defense counsel, stating: "[T]here is no way that I can say based on the evidence that the jury could find beyond a reasonable doubt that Mr. Meitler was under the influence of any drug or combination of drugs to a degree that rendered him incapable of safely driving." The district court granted Meitler's motion for judgment of acquittal on the involuntary manslaughter count, but indicated that the case would proceed on the aggravated battery count. The State then asked for a mistrial on the aggravated battery count and when the district court denied that motion, the State voluntarily dismissed that count.

The State timely filed its notice of appeal on April 6, 2016. The notice specified that the State was appealing on questions reserved by the prosecution pursuant to K.S.A. 22-3602(b)(3). Specifically, the notice of appeal identified the first question as: "The Court improperly excluded testimony by the State's expert witness." The notice identified a second question as: "The Court improperly dismissed Count I, Involuntary Manslaughter, by determining a quantitative measure of the defendant's level of intoxication on methamphetamine and marijuana had not been proven." The State filed its brief on January 25, 2017, and Meitler filed a brief on May 15, 2017.

ANALYSIS

The State's authority to appeal in a criminal case is limited by statute. *State v. Mburu*, 51 Kan. App. 2d 266, 269-70, 346 P.3d 1086, *rev. denied* 302 Kan. 1017 (2015). The appellate court has jurisdiction to entertain a State's appeal only if it is taken within time limitations and in the manner prescribed by the applicable statutes. *State v. Sales*, 290 Kan. 130, 134, 224 P.3d 546 (2010). The State cannot expand its elected statutory basis for the appeal and the appellate court cannot sua sponte select the jurisdictional basis for an appeal by the State. *State v. LaPointe*, 305 Kan. 938, 954-55, 390 P.3d 7 (2017).

7

Here, the State has elected to file this appeal upon questions reserved by the prosecution pursuant to K.S.A. 2016 Supp. 22-3602(b)(3). A judgment of acquittal entered by the district court on a motion filed by the defendant at the close of the State's evidence is final and not appealable by the State, "except in those special circumstances when the question reserved by the State is of statewide interest and is vital to a correct and uniform administration of the criminal law." *State v. Wilson*, 261 Kan. 924, 926, 933 P.2d 696 (1997). Appellate courts should not consider a question reserved by the State when "'"resolution of the question would not provide helpful precedent."'" [Citations omitted]." *State v. Finch*, 291 Kan. 665, 669, 244 P.3d 673 (2011).

The State's notice of appeal claimed that the district court "improperly excluded testimony by the State's expert witness." However, we note with significance that the State completely failed to brief this issue. An issue not briefed by the appellant is deemed waived or abandoned. *State v. Williams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016).

The State's brief identifies one issue on appeal: "The district court interpreted the incorrect standard for finding intoxication when dismissing the State's charge of involuntary manslaughter by stating that the State had to show quantitative analysis of drug levels in the blood." The State maintains this issue is a proper question reserved as it "would allow for the uniform administration of criminal law across the State of Kansas."

Meitler contends the issue is not a proper question reserved. He summarizes what the State had proven at the close of its evidence, including that Meitler had trace amounts of both methamphetamine and marijuana in his system and that Meitler was the cause of the accident. Meitler contends the district court's reason for granting the motion for acquittal was not because of "a lack of quantitative blood analysis." Instead, Meitler contends that the district court granted the motion for judgment of acquittal because the State had offered no proof that Meitler "was under the influence of drugs to a degree that rendered him incapable of safely operating his vehicle."

8

The parties agree that the standard of review for a motion for judgment of acquittal is the sufficiency of evidence standard. When the sufficiency of evidence is challenged in a criminal case, an appellate court reviews the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016). In making a sufficiency determination, the appellate court does not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility. *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016).

The State argues that the district court granted the motion for judgment of acquittal on the involuntary manslaughter charge because the State had failed to show a quantitative analysis of the drug levels in Meitler's blood. We agree with Meitler that the State has misconstrued the reason for the district court's decision. Although the judge noted that Crow performed only "a qualitative, not a quantitative analysis" of the drugs in Meitler's blood, the district court did not specifically rule that the State had to show a quantitative analysis of drug levels in the blood in order to prove involuntary manslaughter in the commission of a DUI. In fact, Crow's testimony made it clear that there was no scientific standard for the amount of methamphetamine or THC that would need to be in the blood for an individual to be intoxicated.

In ruling on the motion for judgment of acquittal, the district court stated that as to the involuntary manslaughter charge, the State was required to prove that an individual died as a result of Meitler committing or attempting to commit "an act described in K.S.A. 8-1567." The district court then noted that the statute prohibited a person from driving under the influence of any drug or combination of drugs to a degree that rendered the person incapable of safely driving a vehicle. The district court then granted the motion for judgment of acquittal on the involuntary manslaughter charge, stating: "[T]here is no way that I can say based on the evidence that the jury could find beyond a reasonable doubt that Mr. Meitler was under the influence of any drug or combination of

9

drugs to a degree that rendered him incapable of safely driving." Based on the evidence the State was allowed to present at trial, we find that the district court was correct in granting a judgment of acquittal on the involuntary manslaughter charge.

Viewing the evidence in the light most favorable to the State, the prosecution established two facts in its case-in-chief against Meitler: (1) Meitler had a detectible amount of THC and methamphetamine in his blood at the time of the accident, and (2) Meitler's truck crossed the center line and struck the oncoming vehicle driven by Bush. But Trooper Morris admitted that there could have been a number of causes for the accident other than drug impairment. He also was clear that there was no evidence at the accident scene that Meitler was impaired by drugs, and he only ordered Meitler's blood to be drawn because it was a fatality accident—a reason that under current law would render the blood draw unconstitutional. Simply put, the State proved there were drugs in Meitler's system, but not "to a degree that rendered [Meitler] incapable of safely driving a vehicle." K.S.A. 2016 Supp. 8-1567(a)(4). This was an essential element of the crime of involuntary manslaughter in the commission of a DUI. K.S.A. 2016 Supp. 21-5405(a)(3).

From our review of the record, the problem in this case may have been that the district court improperly excluded testimony from the State's expert witness. It appears that Crow, a forensic scientist in toxicology with the KBI, may have been well qualified to testify about the effects drugs have on an individual's ability to safely drive a vehicle. Crow testified that she had received training in this area from the KBI and that she had been qualified as an expert witness to give such opinion testimony in other cases. This may have been the key evidence the State needed to establish a prima facie case against Meitler for involuntary manslaughter in the commission of a DUI. However, the district court excluded this evidence at Meitler's trial, and the State has failed to brief the evidentiary issue on appeal.

10

Finally, in one sentence in its brief, the State cites K.S.A. 2016 Supp. 8-1001(i) which states that the "results of qualitative testing for drug presence shall be admissible in evidence and questions of accuracy or reliability shall go to the weight rather than the admissibility of the evidence." This statute would be helpful to the State if it was arguing that the district court improperly excluded the results of Meitler's blood test. But here, the test results were admitted at trial and Meitler is not challenging either the accuracy or the reliability of the tests. However, the test results only establish that Meitler had a detectable amount of THC and methamphetamine in his blood at the time of the accident. The test results do not establish that Meitler was under the influence of drugs to the extent that he was incapable of safely operating a vehicle, which is the essential element of the crime of involuntary manslaughter that the State needed to prove at trial.

To sum up, the district court granted the motion for judgment of acquittal on the involuntary manslaughter charge because, based on the evidence the State was allowed to present at trial, the State failed to establish that Meitler was under the influence of drugs to a degree that rendered him incapable of safely driving a vehicle. The district court's judgment of acquittal does not present a question "of statewide interest [that] is vital to [the] correct and uniform administration of the criminal law," and "'"resolution of the question would not provide helpful precedent."'" [Citations omitted]." *Wilson*, 261 Kan. at 926; *Finch*, 291 Kan. at 669. We conclude the State has failed to establish grounds for an appeal upon a question reserved by the prosecution.

Appeal denied.

11