No. 122,665

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JUSTIN MICHEAL MCFARLAND,
*Appellant.*

SYLLABUS BY THE COURT

1.

Intentional criminal threat is a threat to commit violence communicated with intent to place another in fear.

2.

K.S.A. 2020 Supp. 21-5111(b) defines "another" as a person or persons as defined in the Kansas Criminal Code other than the person whose act is claimed to be criminal. Although a threat against "another" is a material element of criminal threat, the case-specific person who falls into that group is not.

3.

K.S.A. 2020 Supp. 21-5415(a)(1) explicitly states a criminal threat is a threat to commit violence. A simple threat is not enough. Otherwise any person who intentionally threatens another with an intent to place another in fear, no matter the nature of the threat, could be guilty of criminal threat.

1

4.

A threat to commit violence is a very broad category and can involve ordinary, spoken or written words or gestures that simply describe the threatened act of violence. It need not be in any particular form or in any particular words, it may be made by innuendo or suggestion, and it need not be made directly to the intended victim.

5.

A threat to kill another need not include an explanation of the method of killing because ending someone's life is an inherent act of violence.

Appeal from Shawnee District Court; STEVEN R. EBBERTS, judge. Opinion filed April 2, 2021. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., GREEN and HILL, JJ.

POWELL, J.:  Justin Micheal McFarland was convicted by a jury of his peers of intentional criminal threat. He now appeals that conviction, arguing the jury instruction on the elements of criminal threat was clearly erroneous and the evidence was insufficient to support his conviction. After a review of the record, we disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On April 30, 2018, Chelsea McFarland was lying on her bed and scrolling through Facebook when she received a message from a stranger asking if she knew Justin

2

McFarland. Justin is Chelsea's ex-husband, and, at that time, they had been divorced for five years. Attached to the message was a photo of a post by Justin on his Facebook wall. The post read:

> "I'm soo sick and [tired] of my ex wife Chelsea Mcfarland, I'm going to kill her and that isn't a joke that is a promise. So everyone better watch the news in the next few days for a missing person from Topeka, ks"

Chelsea did not see the post on Justin's Facebook wall herself because he had blocked her from seeing his posts. Chelsea also received several messages from others about Justin's post.

About 10 minutes after seeing the post, Chelsea went to the police station to report the threat. Detective Michael Blood with the Special Victims Unit of the Topeka Police Department followed up with Chelsea. Blood also contacted Justin and interviewed him at the Topeka Police Department. Justin admitted to Blood he had posted the Facebook message and, while he had no intention of harming Chelsea, conceded he had hoped Chelsea would see it and the post would scare her.

The State charged Justin with criminal threat under K.S.A. 2017 Supp. 21-5415(a)(1). Although the complaint charged Justin with committing criminal threat intentionally or recklessly, the jury was only instructed on intentional criminal threat, and it found him guilty. The district court sentenced Justin to 13 months' imprisonment but placed him on probation from that sentence for 12 months.

Justin timely appeals.

## I. WAS THE ELEMENTS INSTRUCTION FOR CRIMINAL THREAT ERRONEOUS?

Justin argues the jury instruction setting forth the elements of criminal threat was clearly erroneous because, while the complaint claimed Justin intended to place Chelsea in fear, the jury instruction only said the State had to prove he intended to place "another" in fear. The State responds that the instruction comports with the language of K.S.A. 2020 Supp. 21-5415(a)(1), which only requires the defendant to place "another" in fear, not a specific person. Alternatively, the State argues that even if we conclude the instruction was in error, it was not clearly erroneous as to require a new trial because both the evidence and the arguments of the parties focused only on how Justin intended to place Chelsea in fear.

*Standard of Review*

"'For jury instruction issues, the progression of analysis and corresponding standards of review on appeal are: (1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012).'" *State v. Woods*, 301 Kan. 852, 876, 348 P.3d 583 (2015).

The first and last step are interrelated because whether a party has preserved a jury instruction issue affects the reversibility inquiry. *State v. Bolze-Sann*, 302 Kan. 198, 209, 352 P.3d 511 (2015).

4

When a party fails to object to a jury instruction before the district court, we review the instruction to determine if it was clearly erroneous. K.S.A. 2020 Supp. 22-3414(3). For a jury instruction to be clearly erroneous, the instruction must be legally or factually inappropriate and we must be firmly convinced the jury would have reached a different verdict if the erroneous instruction had not been given. The party claiming clear error has the burden to show both error and prejudice. *State v. McLinn*, 307 Kan. 307, 318, 409 P.3d 1 (2018).

*Analysis*

Justin was charged with criminal threat under K.S.A. 2017 Supp. 21-5415(a)(1). The complaint stated:

"On or about the 30th day of April, 2018 in the State of Kansas and County of Shawnee, JUSTIN M MCFARLAND, did, then and there, unlawfully, feloniously, and knowingly, communicate a threat to commit violence, with the intent to place another in fear or in reckless disregard of the risk of causing such fear, to-wit: Chelsea McFarland, contrary to the form of the statutes in such case made and provided and against the peace and dignity of the State of Kansas."

At trial, the elements instruction for criminal threat, jury instruction No. 9, instructed the jury as follows:

"1. The defendant threatened to commit violence and communicated the threat with the intent to place another in fear.

"2. This act occurred on or about the 30th day of April, 2018, in Shawnee County, Kansas.

"The State must prove that the defendant committed the crime intentionally.

5

"A defendant acts intentionally when it is the defendant's desire or conscious objective to do the act complained about by the State."

Justin complains the elements instruction was erroneous because the complaint alleged that he intended to place Chelsea in fear but the jury instruction informed the jury it only had to find he intended to place "another" in fear. Justin did not object to this language below. Thus, to obtain a new trial, Justin must establish that the jury instruction was not legally or factually appropriate and, if so, he must convince us the jury would have reached a different verdict without the erroneous instruction.

To determine if a jury instruction is legally appropriate, we review whether the instruction properly and fairly stated the law as applied to the case's facts and whether it could have reasonably misled the jury. *State v. Bernhardt*, 304 Kan. 460, 469, 372 P.3d 1161 (2016). "A trial court has the duty to 'define the offense charged in the jury instructions . . .' and 'inform the jury of every essential element of the crime that is charged.'" *State v. Butler*, 307 Kan. 831, 847, 416 P.3d 116 (2018).

Here, Justin was charged with intentional criminal threat. Intentional criminal threat is a threat to "[c]ommit violence communicated with intent to place another in fear." K.S.A. 2020 Supp. 21-5415(a)(1). Justin takes issue with "Chelsea" in the complaint being replaced with "another" in the elements instruction. Although his brief does not specifically allege the instruction was legally inappropriate, implicit in his argument is an assumption that the use of the word "another" in the jury instruction was not legally appropriate because the complaint specifically charged him with intending to place Chelsea in fear. The Kansas Criminal Code defines "'[a]nother'" as "a person or persons as defined in this code other than the person whose act is claimed to be criminal." K.S.A. 2020 Supp. 21-5111(b).

6

Our research has not found a case which directly addresses the situation where the complaint listed the specific person the threat intended to place in fear but the jury instruction did not. Other cases have addressed what K.S.A. 2020 Supp. 21-5415(a)(1) means by "to place another in fear."

In *State v. Williams*, 303 Kan. 750, 368 P.3d 1065 (2016), Williams was charged with criminal threat for threatening a district judge and his assistant. Williams argued there was insufficient evidence to support his criminal threat conviction because there was no evidence he threatened the assistant. Both the complaint and the jury instructions charged Williams with intentionally threatening the district judge and his assistant. After analyzing the criminal threat statute and the definition of "another" in the Kansas Criminal Code, our Supreme Court explained the use of "another" in the criminal threat statute meant criminal threat can be committed by communicating the threat to one person or a thousand. The court held it did not matter if some jurors believed Williams threatened the judge while others believed he threatened the judge's assistant, so long as the jury agreed Williams threatened another. 303 Kan. at 757. Our Supreme Court found: "[T]here did not need to be sufficient evidence to support a threat against each identified victim. Although a threat against 'another' is a material element of criminal threat, the case-specific person who falls into that group is not." 303 Kan. at 757-58.

Although *Williams* involved a criminal threat with two possible victims and the jury instruction did not separate them, it is instructive here. As the case explains, the State is not required to prove the defendant intended to place a specific person in fear, so long as it proves the defendant intended to place "another" in fear. 303 Kan. at 757.

A further example of this principle can be found in *State v. Wright*, 259 Kan. 117, 911 P.2d 166 (1996). Wright claimed the criminal threat complaint failed to allege that he knew the victim would be informed of the threat. Our Supreme Court held the defendant

7

did not have to show the defendant knew the threat would be communicated to the victim so long as there was an intent to place another person in fear. 259 Kan. at 122.

In an aggravated robbery case, *State v. Jaghoori*, No. 112,920, 2016 WL 4262485 (Kan. App. 2016) (unpublished opinion), another panel of our court addressed whether the jury instruction could permissibly be more general than the complaint. The complaint described the property Jaghoori took as a black 1996 Volkswagen Jetta car. The jury instruction identified the property taken simply as "property." Jaghoori objected and, on appeal, argued the jury instruction broadened the basis of his conviction by allowing the jury to convict him based on the taking of any of the victim's property. The panel found the elements jury instruction matched the statutory language and, therefore, was not broader than the complaint because both alleged aggravated robbery exclusively under the applicable statutory elements. 2016 WL 4262485, at *4.

Here, the complaint and the elements instruction both alleged intentional criminal threat and used the language of K.S.A. 2017 Supp. 21-5415(a)(1). The jury instruction was not broader than the complaint and accurately reflected the applicable law. The elements instruction for criminal threat, jury instruction No. 9, was legally appropriate.

When analyzing whether an instruction was factually appropriate, we determine whether sufficient evidence viewed in the light most favorable to the requesting party supports the instruction. *State v. Davis*, 306 Kan. 400, 418-19, 394 P.3d 817 (2017). We have no trouble concluding that the elements instruction was factually appropriate because sufficient evidence supported it. As previously discussed, the State had to prove Justin intended to place another in fear. It did so by putting on evidence that Justin intended to place Chelsea in fear.

8

Because the elements instruction was both legally and factually appropriate, the district court did not err in giving it, and Justin cannot claim he was prejudiced by the instruction.

II.     WAS THERE SUFFICIENT EVIDENCE TO PROVE JUSTIN COMMUNICATED A THREAT TO COMMIT VIOLENCE?

Justin also contends the evidence was insufficient to support his criminal threat conviction. Justin focuses on the language of K.S.A. 2020 Supp. 21-5415(a)(1), which states a criminal threat is a threat to "[c]ommit violence" with the "intent to place another in fear." Justin argues the State did not provide any evidence that his threat was one to commit violence because his Facebook post stating he was going to kill his ex-wife did not contain any reference to the manner by which he would kill her; therefore, nothing in the post referred to violence. The State argues nothing in K.S.A. 2020 Supp. 21-5415(a)(1) requires proof of the means contemplated to carry out the threat to kill and any threat to kidnap and kill someone is a threat to commit violence.

*Standard of Review*

At the start, there is a dispute over the appropriate standard of review. Justin states the standard of review is for sufficiency of the evidence because he is alleging there was insufficient evidence to prove he communicated a threat to commit violence. The State argues the standard of review is a question of law because Justin is claiming there is an additional element of the crime. The State claims proving that the means contemplated to kill Chelsea constituted violence is not an element of criminal threat.

K.S.A. 2020 Supp. 21-5415(a)(1) explicitly states a criminal threat is a threat to "[c]ommit violence." A simple threat is not enough. It must be a threat to commit violence; otherwise any person who intentionally threatens another with an intent to place

9

another in fear, no matter the nature of the threat, could be guilty of criminal threat. The communicated threat of violence is the actus reus of the crime; it is a necessary part of the crime. See *State v. Denton*, No. 111,085, 2015 WL 5036669, at *4 (Kan. App. 2015) (unpublished opinion). Therefore, the State must prove Justin's threat was a threat to commit violence, and the sufficiency of the evidence standard of review applies. But the State is correct that what constitutes violence under the statute is a question of statutory interpretation and is a legal question subject to de novo review. See *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015 (2019).

When a criminal defendant challenges the sufficiency of the evidence, the proper standard of review is "'whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). A guilty verdict will be reversed "only in rare cases when the court determines that evidence was so incredulous no reasonable fact-finder could find guilt beyond a reasonable doubt." *State v. Torres*, 308 Kan. 476, 488, 421 P.3d 733 (2018). Circumstantial evidence may sustain a conviction of even the gravest offense if there is evidence to support a finding that each element of the charged crime was met. *State v. Richardson*, 289 Kan. 118, 127, 209 P.3d 696 (2009).

*Analysis*

Justin posted on Facebook that he was going to kill Chelsea:

"I'm soo sick and [tired] of my ex wife Chelsea Mcfarland, I'm going to kill her and that isn't a joke that is a promise. So everyone better watch the news in the next few days for a missing person from Topeka, ks."

10

"Due process requires the State to prove every element of the charged crime." *State v. Banks*, 306 Kan. 854, 858, 397 P.3d 1195 (2017). "To determine what [elements] the State [must] prove, we look to the statute." *Torres*, 308 Kan. at 488.

Under K.S.A. 2020 Supp. 21-5415(a)(1), intentional criminal threat is any threat to "[c]ommit violence communicated with intent to place another in fear." A threat is "a communicated intent to inflict physical or other harm on any person or on property." K.S.A. 2020 Supp. 21-5111(ff). Justin only alleges there was insufficient evidence his threat was one to commit violence. Violence is not defined in Kansas statute or caselaw.

Our courts have explained that a threat to commit violence is a very broad category and can involve "ordinary, spoken or written words or gestures that simply described the threatened act of violence." See *State v. Stawski*, 47 Kan. App. 2d 172, 178-79, 271 P.3d 1282 (2012) (collecting cases). A threat to commit violence does not need to "'be in any particular form or in any particular words, and it may be made by innuendo or suggestion, and need not be made directly to the intended victim.' . . . All circumstances surrounding the communication, including the relationship between the parties, must be considered." *State v. Miller*, 6 Kan. App. 2d 432, 435, 629 P.2d 748 (1981). Because all circumstances surrounding the parties must be considered, whether a threat is one to commit violence is a question properly for the jury. *In re B.S.*, No. 107,093, 2012 WL 3172095, at *4 (Kan. App. 2012) (unpublished opinion). Here, the issue was submitted to the jury, and it determined Justin's threat to kill his ex-wife was a threat to commit violence.

Justin argues there was insufficient evidence his threat was a threat to commit violence because his post did not explain the method by which he intended to kill Chelsea. We disagree. Justin threatened to kill his ex-wife. The intentional taking of a person's life is inherently a violent act. No matter the method used or contemplated, ending someone's life is an inherent act of violence against that person. So, threatening to

11

end the life of a person is, by its very nature, a threat to commit violence against that person.

An unpublished case from another panel of our court illustrates this principle. In *State v. Jaeger*, No. 104,119, 2011 WL 6382749, at *7 (Kan. App. 2011) (unpublished opinion), the defendant threatened to kill the victim—saying, "'You're fucking dead'"—without specifying the way he would do so. The panel found sufficient evidence in the record existed to find the defendant threatened to commit violence and to support his conviction for criminal threat. 2011 WL 6382749, at *7.

Similarly, here, Justin threatened on Facebook to kill Chelsea, without specifying the way he would kill her. We hold Justin's threat was sufficient evidence, when viewed in the light most favorable to the State, to support his criminal threat conviction.

Affirmed.