NOT DESIGNATED FOR PUBLICATION

No. 118,096

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

STEVEN LENIER WARNER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; CHERYL A. RIOS judge. Opinion filed November 9, 2018.
Affirmed.

*Clayton J. Perkins*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for
appellee.

Before LEBEN, P.J., GREEN and MALONE, JJ.

PER CURIAM:  A jury convicted Steven Lenier Warner of theft of lost or mislaid
property for taking a money bag containing $25,000 that Kim Walker accidentally left
behind in a cart at Walmart. Warner appeals his conviction. First, he challenges the
sufficiency of the evidence presented at trial. He argues that the State failed to submit
sufficient evidence of the following:  (1) that he knew or learned that Walker was the
lawful owner of the bag and (2) that he failed to take reasonable measures to restore the
bag to Walker. Second, Warner argues that the trial court committed reversible error by

1

denying his request for a jury instruction on theft of property valued between $1,000 and $24,999. For the reasons stated later, we reject these arguments. Accordingly, we affirm.

Walker and Dwayne Whitaker were an engaged couple living in Oklahoma. The pair ran a restaurant called the Wild Country Café; Whitaker was the president of the corporation and Walker was the vice president. In late 2015, a friend of Walker's died and left her a $50,000 life insurance policy. Walker and Whitaker decided to use some of the proceeds from the insurance policy to buy an RV and then travel to the Alamo.

The couple saw an RV listed for sale in Hays, Kansas, and decided to drive to Hays and buy it. On December 14, 2015, Walker withdrew $40,000 from her bank. She intended to deposit $25,000 into a new account at a second bank and use the remaining $15,000 to buy the RV. At the second bank, however, the teller erred when setting up Walker's new account, and she could not deposit the cash at the bank. As a result, Walker was left with $40,000 in cash as she and Whitaker began their trip to Hays. Walker put the cash in a zippered money bag labeled "Wild Country Café." Whitaker controlled the bag during the trip. In addition to the $40,000 in the bank bag, the couple also brought separate money on the trip. Whitaker brought a separate $9,000 in cash which he kept in his pocket.

After finishing at the second bank the couple drove up to Hays. They reached Hays the evening of December 14 and bought the RV. They paid for the RV with $15,000 in cash from the money bag; both Whitaker and the RV seller counted out the cash. After paying for the RV, exactly $25,000 remained in the money bag. Throughout the trip Whitaker also put several signed gas receipts in the bag. The couple did not use the money from the bag to buy anything else besides the RV.

2

The couple spent the night in the RV in Hays. The next morning, they left Hays and headed east. The couple did not get very far because the RV overheated outside of Topeka. They called a wrecker to tow the RV to Topeka for repairs.

Whitaker paid the wrecker with cash from his separate $9,000 kept in his pocket. He pulled $200 too much from his pocket to pay the wrecker, so he put the extra $200 in the money bag with Walker's $25,000. The couple checked into a hotel while waiting on the repairs. Walker paid for the hotel with cash, but not cash from the money bag. That evening the couple ate at a restaurant. Whitaker paid for the meal with cash from his $9,000. The restaurant food severely upset Whitaker's stomach for the next few days.

The next day, December 16, the couple went to the Walmart near their hotel. They brought the money bag into the store and kept it in the child seat of their cart while they shopped. When they checked out, they paid with the $200 that Whitaker had placed in the money bag after paying the wrecker. Whitaker started feeling ill, so the couple quickly headed for the exit.

A man later identified as Warner was also at Walmart on December 16. Warner visited the Subway restaurant located in Walmart for 15 to 20 minutes. He then walked from Subway, past the Walmart checkout lanes, towards the store foyer. Walker and Whitaker passed through the same aisle at the same time on their way to exit the store. Warner walked behind the couple at a distance of about five to six checkout lanes apart. Walmart's security footage captured Walker, Whitaker, and Warner all in the same security camera shot of the area.

The couple rounded the corner from the aisle to the foyer and hurriedly grabbed their bags from the cart. Once Warner, who had been slightly behind the couple, reached the corner, he stopped. Walker and Whitaker parked their cart in the store foyer and removed the shopping bags from the child seat area of the cart. They then left the store

3

and drove away. The couple failed to take the money bag out of the cart when they took the shopping bags, and they left the store without the money bag.

About 20 seconds after the couple left the store without the money bag, Warner went straight to Walker and Whitaker's cart. Warner leaned on the cart, then picked up the money bag and put it inside his jacket. He continued to lean on the cart for about a minute and fiddled with the bag inside his jacket. Then, he exited the store with the bag in his jacket. He walked across the street away from the store.

While stopped at a light on the way back to the hotel, Whitaker realized he had left the money bag in the cart. The couple drove back to the store as quickly as possible. They were away from the store for only 5 to 10 minutes.

When Walker and Whitaker returned to Walmart, Walker first asked an employee cleaning in the foyer if he had seen the couple's cart. The employee had not. Whitaker went to the restroom. Walker went to the service desk and the service desk called Walmart's security.

Walmart security called the Topeka police and Officer Larry Gonzalez responded. Walker explained to Officer Gonzalez that she was missing a blue or green money bag with "Wild Country Café" written on it. Walker completed a signed statement for the officer stating that there was $30,000 in the missing bag. Whitaker then returned from the bathroom. Whitaker spoke with Walker and told her she had misinformed Officer Gonzalez: there was only $25,000 in the bag. Walker then told Officer Gonzalez that the correct amount was $25,000, not $30,000.

Walker and Whitaker left Topeka after their RV repairs were finished. Topeka police continued to investigate the missing bag after the couple left. The police issued two bulletins with photos from Walmart's security footage, seeking the identity of the

4

person shown taking the money bag from the cart and leaving the store. Police issued the first bulletin in December 2015. Police issued the second bulletin with clearer photos in January 2016.

Warner called his ex-wife Teresa Grant in January 2016. Warner told Grant that the police were looking for him because they accused him of taking money. He asked her to meet him and give him food and money. Grant agreed to help. After she ended the call with Warner, she looked up the Crime Stoppers bulletin containing photos from Walmart's security footage. Grant had no doubt that Warner was the man pictured in the bulletin, so she called the police.

Warner called Grant again while she was talking to the police. The police had Grant agree to meet Warner and ask him where he was staying. Warner told Grant he was staying at a hotel. Grant told the police the name of the hotel. The police then arrested Warner at the hotel.

The State originally charged Warner with theft of lost or mislaid property valued at more than $1,000 but less than $25,000. At the preliminary hearing, Walker testified that the money bag contained exactly $25,000. After the hearing, the State amended the complaint against Warner to charge him with theft of lost or mislaid property valued at least $25,000 but less than $100,000.

At trial, the State presented testimony from Walker, Whitaker, Grant, and multiple Topeka police officers who worked on the case. The State also introduced Walmart security footage from December 16. The State introduced evidence that both Grant and Warner's ex-fiancée Patricia Blanche identified Warner as the man in the Crime Stoppers bulletins. Warner did not present any evidence or witnesses, but cross-examined the State's witnesses.

Walker and Whitaker testified about how the couple left the bag behind in their cart and how much money was in the bag. Walker testified that the bag was labeled "Wild Country Café." Walker testified that she initially told Officer Gonzalez that the bag held $30,000, but she corrected her error by telling Officer Gonzalez the bag actually held $25,000. Whitaker testified that the bag contained $25,000, and that when the bag went missing, the bag contained at least three gas receipts signed by Whitaker.

On cross-examination, Warner emphasized the inconsistency in Walker's statements about the amount of money in the bag. Officer Gonzalez testified that he did not recall Walker correcting the amount from $30,000 to $25,000. Warner also emphasized that Whitaker could have used cash from the bag to pay for travel expenses before the couple shopped at Walmart, thereby reducing the total amount of money in the bag to less than $25,000. Both Walker and Whitaker remained adamant that the bag contained exactly $25,000 and that they paid for travel expenses using different money.

Detective Claude Harrison was the lead detective on the case. Detective Harrison testified that when he spoke with Walker and Whitaker, they corrected Walker's earlier misstatement and told him that the bag contained $25,000, not $30,000. When cross-examining Detective Harrison, Warner emphasized the couple's inconsistent accounts of the amount of money in the bag. Warner elicited testimony that Detective Harrison had not learned of or investigated Whitaker's claims about placing signed gas receipts in the bag. Warner highlighted that Detective Harrison did not know that Walker and Whitaker had paid for many travel expenses with cash before losing the money bag.

The State played relevant clips of Walmart's security footage for the jury. Detective Harrison, who had reviewed the security footage while investigating the case, explained to the jury what was happening in each clip.

6

Detective Harrison explained, and the clip showed, that both Warner and the couple passed through the aisle at the front of the store behind the checkout lanes at the same time. The clip shows Warner walking behind the couple at a distance of about five to six checkout lanes apart. Detective Harrison testified that the video showed Warner went straight to the cart containing the money bag after the couple left the foyer, then placed the money bag in his coat and left the store. The video showed Warner, who had been out of the view of the camera, walking up to the couple's cart about 20 seconds after the couple left. The video showed Warner stayed at the cart for about 90 seconds, apparently placing the bag in his jacket and then messing with the bag inside his jacket.

Next, the video showed Warner leaving the Walmart, walking along the parking lot, and exiting the Walmart property on foot. Warner's departure stands in contrast to his arrival: Warner was dropped off at Walmart by a truck, and he uses a cane to walk because of neck and back injuries. Additionally, it was December and apparently cold outside, as evidenced by all of the customers shown on the security footage wearing heavy winter coats.

On cross-examination, Detective Harrison said that the footage shows Warner never crossed paths with Walker and Whitaker. He also admitted Warner never spoke to or interacted with the couple in the video. Nevertheless, Detective Harrison testified on redirect that the video does show Warner in the same camera shot as the couple, walking behind them after they checked out and went to the foyer. Detective Harrison clarified that he stated Warner did not "cross paths" with the couple because to him, "following behind them is not crossing paths."

Grant testified that Warner called her asking for food and money in January 2016. She testified that Warner had told her that the police were searching for him because they accused him of taking money. The State emphasized the importance of this testimony. The police had not publicly disclosed that Warner was accused of taking money; the

7

Crime Stoppers bulletin only stated that the pictured individual, later identified as Warner, was suspected of "felony theft." On cross-examination, Warner emphasized that although he was accused of taking a large amount of money in December, he texted Grant just one month later asking for food and money.

Warner moved for a judgment of acquittal at the close of the State's case. The court denied the motion. Warner requested a jury instruction on theft of lost or mislaid property valued more than $1,000 and less than $25,000 as a lesser included offense. The court denied the motion and gave only the instruction pertaining to theft of lost or mislaid property valued at least $25,000 but less than $100,000.

The jury found Warner guilty of theft of lost or mislaid property valued at least $25,000 but less than $100,000. Warner received a sentence of 24 months of probation with a 13-month underlying prison term. The court also ordered Warner to pay Walker $25,139.97 in restitution. Warner timely appealed.

*Did the State Admit Sufficient Evidence to Support Warner's Conviction?*

*Standard of Review*

"'When the sufficiency of evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016). The court will not "'reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility'" when reviewing a conviction for sufficiency of the evidence. *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016). The court will uphold a conviction if the court is convinced that a rational fact-finder could have found the defendant guilty beyond a reasonable doubt on the basis of the evidence presented at trial. *State v.*

8

*Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 (2015). The court will only reverse a conviction "in rare cases where the testimony is so incredible that no reasonable factfinder could find guilt beyond a reasonable doubt." *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983). A conviction may be upheld even if based only on circumstantial evidence and reasonable inferences fairly deducible from that circumstantial evidence. *State v. McClelland*, 301 Kan. 815, 820, 347 P.3d 211 (2015) (quoting *State v. McCaslin*, 291 Kan. 697, Syl. ¶ 9, 245 P.3d 1030 [2011]).

A claim of insufficient evidence to support a conviction in a criminal case "amounts to a posttrial claim that the State failed to meet its burden to prove each essential element of the charges." *State v. Brown*, 306 Kan. 1145, 1157, 401 P.3d 611 (2017) (citing *State v. Logsdon*, 304 Kan. 3, 21, 371 P.3d 836 [2016]). The State charged Warner with theft of property lost, mislaid or delivered by mistake. See K.S.A. 2017 Supp. 21-5802. A person is guilty under the statute if the person: (1) obtains control of property of another person; (2) knows or learns the identity of the property's owner; (3) fails to take reasonable measures to restore the property to its owner; and (4) intends to permanently deprive the owner of the possession, use, or benefit of the property. K.S.A. 2017 Supp. 21-5802(a).

On appeal, Warner argues only that the State failed to admit substantial evidence (1) that Warner knew or learned that Walker was the owner of the money bag and (2) that Warner failed to take reasonable measures to restore the money bag to Walker. Because Warner did not raise or brief the sufficiency of the evidence with respect to the remaining two elements, he has abandoned those arguments. See *State v. Williams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016).

*Knew or Learned of the Identity of the Owner*

The trial court properly instructed the jury that to convict Warner, it must find that beyond a reasonable doubt Warner "knew or learned that Kim Walker was the lawful owner of the property." On appeal, Warner argues that the State presented no evidence that Warner knew or learned that Walker was the lawful owner of the property.

At trial, the State argued that Warner knew or learned Walker was the owner of the bag because Warner followed relatively close behind the couple as they passed through the front of Walmart to exit and walked straight up to the cart 20 seconds after the couple left the store. The State also argued that Warner should have known Walker was the owner of the property on the basis of the writing on the bag, including the name of the bank and the name of the couple's business: "Wild Country Café." The State further argued that Warner would have learned Walker's identity on the basis of the gas receipts signed by Dwayne, which were also in the bag.

On appeal, Warner argues that the State "at best, presented evidence that the bank bag had information that could allow a person to attempt to identify its owner." This is a compelling argument as it pertains to the receipts and the writing on the bank bag, which merely provides "clues" to Walker's identity and do not clearly establish Walker as the owner of the bag. Warner further argues that the State provided no evidence that Warner learned Walker's identity on December 16, 2015, because that is the date the State alleged the crime occurred. Nevertheless, under sufficiency of the evidence analysis, Warner's argument fails.

The State admitted Walmart security footage of Warner, Walker, and Whitaker in Walmart on December 16, 2015. The State also admitted testimony from Detective Harrison describing the security footage. Detective Harrison described how Warner followed behind Walker and Whitaker as they pushed their cart, containing the money

10

bag, through the aisle near the checkout lanes to the exit. Detective Harrison also testified that Warner went straight to the couple's cart after they left the store. The video itself shows Warner following behind the couple at a distance of about five or six checkout lanes. The video shows the couple unloading their grocery bags but leaving behind the money bag in the cart. The video also shows Warner going straight to the couple's cart to pick up the bag about 20 seconds after the couple left the store.

A reasonable jury could have concluded that Warner saw the bag in Walker's possession in the cart when he was following the couple down the aisle, and that Warner thus knew Walker was the owner of the bag. A jury also could have reasonably inferred, based on the timing of the couple's exit and the distance between Warner and the couple, that Warner saw Walker and Whitaker leave the bag in the cart. Accordingly, a reasonable jury could find that Warner knew Walker was the rightful owner of the bag when he took the bag. Warner's claims that the State presented insufficient evidence that he knew Walker was the lawful owner of the bag therefore fail.

*Failed to Take Reasonable Measures to Restore the Property to Rightful Owner*

The trial court also correctly instructed the jury that in order to convict Warner, it had to find that Warner "failed to take reasonable measures to restore the property" to Walker. Warner argues on appeal that the State did not submit sufficient evidence that Warner failed to take reasonable measures to restore the property to Walker. Warner argues that at trial "there was simply no evidence presented of what Warner did or did not do after leaving Walmart." Nevertheless, this is not the case.

The State admitted the security footage into evidence. The footage showed that a man identified as Warner approached the couple's cart about 20 seconds after they left the store. Warner went straight to the cart. He remained at the cart for about 90 seconds and put the bag inside his jacket. He did not call out to Walker and Whitaker about the bag;

11

he did not contact a Walmart employee; and he did not go to the service desk nearby at the front of the store. Instead, he left the store on foot, even though it was December and he was initially dropped off at the store by a truck. He walked past the store and out of the parking lot before disappearing from the view of the security cameras. The State emphasized Warner's failure to act during its closing argument. The prosecutor stated, "[H]e failed to make any effort, not only reasonable effort, but any effort, to return that property to the lawful owner. He grabbed it and walked out of the store. It was pay day." Indeed, the money bag and money were never recovered and never returned to Walker.

A reasonable jury could conclude that the video showing Warner pocketing the bag and quickly leaving the store without contacting anyone proved beyond a reasonable doubt that Warner failed to take reasonable measures to restore the bag to Walker. Accordingly, both of Warner's sufficiency of the evidence challenges fail.

*Did the Trial Court Err By Denying Warner's Request For a Jury Instruction on the Lesser Included Offense of Theft of Mislaid or Lost Property Valued at More Than $1,000 But Less Than $25,000?*

*Standard of Review*

When a party raises a jury instruction challenge, this court applies the following standard of review:

> "'(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and

12

degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012).' [Citation omitted.]" *State v. Fisher*, 304 Kan. 242, 256-57, 373 P.3d 781 (2016).

The same analytical framework applies when a defendant challenges on appeal the trial court's failure to give a lesser included offense instruction. *State v. Armstrong*, 299 Kan. 405, 432, 324 P.3d 1052 (2014).

*Jurisdiction and Reviewability*

Here, Warner requested the jury be given the lesser included instruction regarding theft of lost or mislaid property valued at more than $1,000 but less than $25,000. The trial court denied his request. K.S.A. 2017 Supp. 22-3414(3) requires a party to object to the trial court's failure to give a requested instruction, and so object before the jury retires to deliberate. Thus, parties may not claim the failure to give an instruction was error unless they object to the instruction. If a party fails to so object, the court may only review the instruction or failure to give an instruction for clear error.

On the other hand, our Supreme Court has, in several cases, proceeded to step 2 of the above analysis when a defendant has requested a lesser included instruction and the trial court denied the request. See, e.g., *State v. Louis*, 305 Kan. 453, 457, 384 P.3d 1 (2016) ("Louis requested the instructions at issue here, so he preserved the issue."); *State v. Bernhardt,* 304 Kan. 460, 475, 372 P.3d 1161 (2016) ("Bernhardt asked for and was denied a voluntary manslaughter instruction, so the issue is fully preserved for our review.").

Here, Warner requested a lesser included instruction on severity level 9 theft of mislaid property, but the trial court denied it. Although Warner did not object on the record to the instructions as given or to the court's failure to give the lesser instruction,

the State does not address preservation of this issue in its brief. Thus, the State has waived any argument that Warner failed to preserve his claim. See *Williams*, 303 Kan. at 758.

The State argues that no evidence at trial supported the lesser instruction: Walker and Whitaker both testified that the bag contained exactly $25,000, and Detective Harrison investigated the amount by verifying Walker's initial bank withdrawals in Oklahoma. The State also submitted evidence confirming the $15,000 purchase price of the RV. Warner, however, argues that a reasonable juror could have believed less than $25,000 was in the bag because of Walker's conflicting statements and the cash paid for travel expenses before the couple lost the bag.

Nevertheless, Warner offered no evidence or witness testimony that the bag contained less than $25,000. Rather, Warner simply sought to cast doubt on Walker's and Whitaker's testimony. He did so by pointing to Walker's inconsistent statements about the amount in the bag (initially claiming $30,000, then later claiming $25,000), and highlighting the opportunities Walker and Whitaker had to spend the cash from the bag on travel expenses. The State addressed Walker's inconsistent statements by eliciting testimony that Walker misstated the amount because she was hysterical after losing the bag, and she corrected the amount as soon as possible. The State addressed the opportunities to spend the $25,000 by eliciting testimony that Whitaker had brought a separate $9,000 in cash on the trip, which he kept in his pocket and used to pay for travel expenses, while Walker also had separate cash that she used to pay for the hotel lodging.

Warner's requested instruction for a lesser included offense was factually inappropriate because there was no evidence presented at the trial that would have reasonably supported a conviction of theft of lost or mislaid property valued at less than

14

$25,000. Thus, the district court did not err in denying Warner's request for the lesser included instruction.

Affirmed.