No. 119,677

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOHN PATRICK STEVENSON,
*Appellant*.

SYLLABUS BY THE COURT

1.

If a district court reaches the correct result, its decision will be upheld even though it relied on the wrong ground or assigned erroneous reasons for its decision.

2.

A defendant held to answer on an appearance bond for criminal charges who is not brought to trial within 180 days after arraignment shall be entitled to be discharged from further liability for the charged offenses. The State bears the legal obligation to ensure a defendant is brought to trial within this statutory deadline, and a defendant need not take any affirmative action to ensure these speedy trial rights are honored.

3.

The plain reading of K.S.A. 2019 Supp. 22-3402(d) states that when a defendant appears in court "on such warrant," it is referring to the bench warrant issued due to the defendant's failure to appear at the trial or pretrial hearing in that court while on bond because the court that issued the warrant is the court that has the power to reschedule the trial.

4.

The Kansas Supreme Court in *State v. Boettger*, 310 Kan. 800, 818-19, 450 P.3d 805 (2019), *cert. denied* 140 S. Ct. 1956 (2020), declared the "reckless disregard" portion of the criminal threat statute found in K.S.A. 2018 Supp. 21-5415(a)(1) to be unconstitutionally overbroad because it encompassed more than true threats and thus potentially punished constitutionally protected speech. While the *Boettger* court held the 2018 version of reckless criminal threat unconstitutional, the 2015 version of reckless criminal threat is the same in relevant part and is also unconstitutional.

5.

When an appellate court decision changes the law, that change acts prospectively and applies only to all cases that are pending on direct review or not yet final. A defendant whose case was on direct appeal at the time an opinion changing the law is issued is entitled to the benefit of the change in the law.

6.

A constitutional error is harmless if the State can show beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, i.e., where there is no reasonable possibility that the error contributed to the verdict.

7.

When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.

8.

      The appellate courts employ a three-step process when analyzing jury instruction issues: (1) determine whether the appellate court can or should review the issue, i.e., whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) consider the merits of the claim to determine whether error occurred below; and (3) assess whether the error requires reversal, i.e., whether the error can be deemed harmless. The first and third step are interrelated in that whether a party has preserved a jury instruction issue will affect the reversibility inquiry at the third step.

9.

      Disorderly conduct as defined in K.S.A. 2019 Supp. 21-6203 is not a lesser included offense of criminal threat as defined in K.S.A. 2019 Supp. 21-5415(a)(1) because all the elements of disorderly conduct are not included within the elements of criminal threat.

      Appeal from Ellis District Court; GLENN R. BRAUN, judge. Opinion filed November 20, 2020. Affirmed in part, reversed in part, and remanded with directions.

      *Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

      *Jodi Litfin*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., GREEN and STANDRIDGE, JJ.

      POWELL, J.: John Patrick Stevenson was convicted by a jury of his peers of criminal threat. He now appeals that conviction, arguing his speedy trial rights were violated, his conviction is both unconstitutional and unsupported by the evidence, and a lesser included instruction of disorderly conduct should have been given. Because the State charged Stevenson in one count with both intentional and reckless criminal threat and because it is possible the jury found him guilty of reckless criminal threat—which the

3

Kansas Supreme Court has declared to be unconstitutional—his conviction for criminal threat must be reversed and the case remanded to the district court for a new trial. We affirm the district court in all other respects.

FACTUAL AND PROCEDURAL BACKGROUND

During the evening of July 27, 2015, Ellis Police Chief Taft Yates received a call about a reckless driver in a white early 1990s Ford truck. Not long after, Yates saw the truck in question make a left turn around a corner "at a high rate of speed."

Yates initiated a traffic stop, exited his patrol vehicle, approached the driver of the truck—Stevenson—and explained the reason for the stop. A passenger was also present. Yates requested Stevenson's driver's license, which Stevenson did not have on him, and learned from dispatch that Stevenson's license had been suspended. Yates told Stevenson that he would have to take him to the Ellis Police Department "and issue him a ticket and some instructions." Yates told the passenger she could follow them to the police department and could take Stevenson home once they were finished. Yates informed Stevenson he would be placed in handcuffs and asked Stevenson if he had anything in his pockets. Stevenson said he had a straight razor in his pocket.

At that same time, Stevenson put his hand into his front left pants pocket, discreetly pulled out a brown prescription bottle, and tossed it on the passenger's seat of the truck. Yates then handcuffed Stevenson and asked what he threw on the seat. Stevenson replied, "Nothing." Yates then reached into the truck and picked up the bottle; he discovered it was a prescription of OxyContin, which is a controlled substance, for Kimberly A. Owston, with whom Stevenson lived and for whom he cared.

Yates then placed Stevenson in the back of his patrol car and told the passenger not to come to the police station after all because Stevenson was also being arrested for

4

possession of OxyContin and would be booked into jail. Yates returned to the patrol vehicle, informed Stevenson of the crimes he was being arrested for, and discussed the pills with Stevenson. Stevenson told Yates he was the primary care giver for Owston and they were her pills, although at times he identified the person he was caring for as a different individual.

Yates transported Stevenson to the Ellis Police Department. There, Stevenson became belligerent and agitated, which continued to escalate as he and Yates were talking. Stevenson began threatening Yates. These threats included threats about Yates' job and his badge, threats about taking Yates out and hanging him, and threats for Yates to take off his gun and badge and take off Stevenson's handcuffs and then Stevenson would "fuck [Yates] all up." Stevenson also exclaimed, "I don't care whether I have cuffs on or not." Stevenson's outburst was captured on video, but apparently a small portion of the video was corrupted, and not all the interaction between Yates and Stevenson was able to be played for the jury.

One video begins after Stevenson had been transported to the police station. It appears Yates was not recording the entire time and at some point deemed it necessary to turn on his body cam because the video starts with what can be assumed to be Yates' finger briefly partially blocking the view while he is turning on the camera. Stevenson is then heard saying, mid-sentence in an agitated manner, "—that fucking house, and move shit around. There's pills stash—" then the body cam is pointed at Stevenson and he immediately clams up and declares, "Don't even put that on [inaudible]. I'm not talking to you no more." Stevenson begins to close a door, and Yates orders him to leave the door alone and come into his office so he can begin Stevenson's paperwork. Of note, Yates was the only officer on duty that night, so he and Stevenson were in the station alone. Stevenson ultimately comes into Yates' office and continues to speak to Yates in an angry manner.

Two females associated with Stevenson arrive at the station and ring the station's door buzzer. Yates informs one of the females that Stevenson is going to jail; she tells Yates that the pills were not Stevenson's and encourages Stevenson to calm down. Yates does not permit her to come into the station. Stevenson angrily rants and walks away. The females, one of whom is crying, buzz the door again and beg for Stevenson to be released. Yates tells them to "explain it to the Judge, please." Yates then goes to find Stevenson, who returned to Yates' office.

As Yates is entering his office, Stevenson states, "Your ass is gonna get hung for this one." Yates begins to work at his computer and is on the phone attempting to get transportation backup. Stevenson is sitting against the far wall in Yates' office with a desk between them. Stevenson occasionally speaks to Yates, at one point saying, "Fuck up my corrections and I'll make your life just as bad as mine." Stevenson begins to get angry again about the pills and abruptly stands up while yelling at Yates, explaining the pills belong to the woman he cares for and they are not his. During this exchange he yells his lawyer is "going to crawl up your fucking ass and choke you out."

Some time passed between splices of the video. When the recording picks up again, Stevenson is in the main portion of the station; Yates' office is off to one side, and Yates is still at his desk. Stevenson states, "Fucking with me every day. This is what I get to look forward to, huh? [Inaudible.] Local law enforcement can fuck you over and treat you like they're your friend just so they can stick [a] knife and a dick in your ass." Stevenson continues to rant for several minutes. At one point during this rant he exclaims, "Why don't you take your badge and your gun off, mother fucker? I'm gonna hang you by your fucking [inaudible]. I'm serious to fucking God." He also exclaimed, "Take off your fucking badge and your fucking gun and let's go in the back and leave the handcuffs on and I'll fuck you all up. Guarantee it."

6

Stevenson quickly reenters Yates' office and continues yelling at Yates. He briefly leaves, then returns and grabs a chair in the office, with his hands still cuffed behind his back, and carries it right up next to Yates' desk, with about a foot and a half between the men. He repeatedly threatens Yates' job, as he has been doing throughout their encounter. At times Yates whispers in an attempt to deescalate the situation. When backup arrives Yates orders Stevenson to leave; Stevenson refuses to do so, prompting Yates to touch his arm, and Stevenson exclaims, "Take your fucking hands off of me! I don't care if I got fucking handcuffs on or not!" After a pat-down and confiscation of the straight razor by the backup officer, Stevenson is transported to the jail.

Yates recalled that Stevenson threatened him with physical violence "at least" three times during the entire encounter. Although Stevenson was handcuffed, Yates testified he took the physical threats "very seriously" because he knew someone could inflict physical harm to another even without their hands.

Initially, the State charged Stevenson with one count of unlawful possession of Oxycodone, one count of criminal threat, and one count of possession of drug paraphernalia. Stevenson pled not guilty. The district court granted Stevenson's request for bond and released him on November 23, 2015. After being released, however, Stevenson disappeared and his whereabouts became unknown until he was arrested in August 2017 in Reno County on outstanding warrants.

After Stevenson's apprehension, the State filed an amended complaint, reducing the charges to a single count of criminal threat because Owston died before a full investigation of the drug charges could be completed. The case proceeded to a jury trial on February 20, 2018.

At trial, Stevenson testified on his own behalf. He testified he was "just upset and venting," He did not mean to threaten Yates and "was just talking shit." He did admit to

7

telling Yates, "I'm going to fuck you up," but said he did so only while venting and was mad. He never admitted it was a threat to communicate violence. He also told the jury he "never meant anything [he] said to [Yates]."

The jury found Stevenson guilty of one count of criminal threat. The district court sentenced him to 12 months' imprisonment.

Stevenson timely appeals.

## ANALYSIS

Stevenson raises four points of error on appeal: (1) His statutory right to a speedy trial was violated; (2) his conviction for criminal threat cannot stand because the criminal threat statute is unconstitutionally overbroad; (3) there is insufficient evidence supporting his criminal threat conviction; and (4) the district court erred in not giving an unrequested disorderly conduct jury instruction because that offense is a lesser included offense of criminal threat.

## I. WAS STEVENSON DENIED HIS STATUTORY RIGHT TO A SPEEDY TRIAL?

First, Stevenson argues the district court erred in denying his motion to dismiss for a violation of his statutory speedy trial rights. Specifically, he argues the speedy trial clock began to run after he was brought before the Barton County District Court on its warrant and while his Ellis County bench warrant was pending. The State replies that the speedy trial clock on the rescheduled trial did not start to run until Stevenson appeared in front of the Ellis County District Court.

A.    *Standard of Review*

Often, a district court's ruling involving a defendant's speedy trial rights involves factual and legal disputes, although the relevant facts here are undisputed. We review the district court's factual findings to determine if they are supported by substantial competent evidence while we give no deference to a district court's legal conclusions. Whether a trial setting violated a defendant's statutory right to a speedy trial is a question of law we review de novo. *State v. Vaughn*, 288 Kan. 140, 143, 200 P.3d 446 (2009). Interpretation of a statute is also a question of law subject to unlimited review. *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015 (2019).

B.    *Speedy Trial Statute*

K.S.A. 2019 Supp. 22-3402(b) mandates that a defendant held to answer on an appearance bond for criminal charges who is not "brought to trial within 180 days after arraignment . . . shall be entitled to be discharged from further liability" for the charged offenses. See *State v. Brownlee*, 302 Kan. 491, 503, 354 P.3d 525 (2015). The State bears the legal obligation to ensure a defendant is brought to trial within this statutory deadline, and a defendant need not take any affirmative action to ensure these speedy trial rights are honored. *State v. Sievers*, 299 Kan. 305, 307, 323 P.3d 170 (2014).

However, a different rule applies when the defendant's trial date has been set but the defendant fails to appear for the trial or any pretrial hearing and a bench warrant is issued:

"After any trial date has been set within the time limitation prescribed by subsection (a), (b) or (c), if the defendant fails to appear for the trial or any pretrial hearing, and a bench warrant is ordered, the trial shall be rescheduled within 90 days after the defendant has appeared in court after apprehension or surrender on such warrant.

9

However, if the defendant was subject to the 180-day deadline prescribed by subsection (b) and more than 90 days of the original time limitation remain, then the original time limitation remains in effect." K.S.A. 2019 Supp. 22-3402(d).

### C.    *Chronology of Events*

According to the relevant undisputed chronology, Stevenson was arraigned on October 9, 2015; the district court set a pretrial conference for January 7, 2016, and the trial on January 26, 2016. However, Stevenson failed to appear for the pretrial—in fact, his bond had been revoked and a bench warrant issued due to allegations that he had violated the terms of his pretrial release—and subsequently his counsel sought a continuance of the trial because Stevenson's whereabouts were unknown. The district court granted this request and indicated it would not set a new trial date until Stevenson was apprehended and appeared in court.

Stevenson was subsequently arrested in Reno County for outstanding warrants from both Barton and Ellis Counties on August 22, 2017, and was personally served the Ellis County warrant while in jail in Barton County. He appeared before the Barton County District Court the next day and remained in the Barton County jail from the date of his arrest until November 22, 2017, after resolving his Barton County cases. Stevenson was again personally served the Ellis County warrant on November 25, 2017; he returned to Ellis County on November 27, 2017, and appeared before the district court there. At that appearance, Stevenson's trial was rescheduled for February 20, 2018—86 days later. Stevenson subsequently moved to have his case dismissed on statutory speedy trial grounds.

At the February 4, 2018 hearing on the motion to discharge Stevenson's case for statutory speedy trial violations, Stevenson's counsel did not make a specific argument as to how the State had violated Stevenson's right to a speedy trial, stating instead, "[T]he

10

motion really speaks for itself." Stevenson's written motion before the district appears to make the same arguments he presents to us—his statutory speedy trial rights under K.S.A. 2019 Supp. 22-3402(d) were violated because he was not brought to trial on his Ellis County charge within 90 days of appearing before the Barton County District Court. The State argued then and argues now that the speedy trial clock for rescheduling the trial did not begin to run until Stevenson appeared on the bench warrant in front of the Ellis County District Court.

The district court agreed with the State's argument that Stevenson's trial was appropriately scheduled after his appearance on the warrant from Ellis County. In its written order, it held:

> "WHEREUPON, following argument of the parties, the Court finds that the defendant was scheduled within ninety (90) days of [trial] after appearing before the Court on November 27, 2017. The time prior to that from the issuance of the bench warrant for the defendant's failure to appear at pretrial conference on January 7, 2016, through November 27, 2017, is charged to the defendant for speedy trial calculations. Therefore, the Court denied the defendant's Motion to Dismiss and finds the trial schedule is in compliance with K.S.A. 22-3402(d). The defendant's motion is denied."

The district court based its decision in part on the fact that Stevenson had failed to seek relief under the Uniform Mandatory Disposition of Detainers Act (UMDDA), K.S.A. 22-4301 et seq. This conclusion was erroneous because the UMDDA only allows those in the custody of the Secretary of Corrections to seek resolution of any pending charges. See K.S.A. 2019 Supp. 22-4301 (UMDDA applicable to "[a]ny inmate in the custody of the secretary of corrections"); see also *State v. Burnett*, 297 Kan. 447, 456, 301 P.3d 698 (2013) (UMDDA applicable to defendant being physically located in county jail but in KDOC custody in accordance with district court's order). Here, Stevenson was not in the custody of the Secretary of Corrections and was being held in the Barton County jail. Nevertheless, if a district court reaches the correct result, its

decision will be upheld even though it relied on the wrong ground or assigned erroneous reasons for its decision. See *State v. Overman*, 301 Kan. 704, 712, 348 P.3d 516 (2015).

       D.     *No Speedy Trial Violation*

At dispute here is the following language in K.S.A. 2019 Supp. 22-3402(d): "[T]he trial shall be rescheduled within 90 days after the defendant has appeared in court after apprehension or surrender on such warrant." Stevenson argues this provision is triggered after a defendant appears in any court; the State argues the clock does not start running until the defendant appears in the court that issued the warrant because it alone has the jurisdiction to schedule and conduct the trial on the outstanding charges. We agree with the State.

The most fundamental rule of statutory construction is the intent of the Legislature governs if that intent can be ascertained. *State v. LaPointe*, 309 Kan. 299, 314, 434 P.3d 850 (2019). We must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, we are not permitted to speculate about the legislative intent behind that clear language and must refrain from reading something into the statute that is not readily found in its words. In fact, where there is no ambiguity in the statute, we need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous do we use canons of construction or examine legislative history to construe the Legislature's intent. *State v. Pulliam*, 308 Kan. 1354, 1364, 430 P.3d 39 (2018).

Here, a plain reading of K.S.A. 2019 Supp. 22-3402(d) tells us that when a defendant appears in court "on such warrant," it is referring to the bench warrant issued due to the defendant's failure to appear at the trial or pretrial hearing *in that court* while on bond. This makes sense because the court that issued the warrant—and for which the

12

trial needs to be rescheduled because the defendant's elusive actions prevented the trial from taking place—is the court that has the power to reschedule the trial.

Applying this understanding to the facts in this case illustrates the point. Stevenson claims his appearance before the Barton County District Court started the 90-day clock. There are two problems with this argument. First, Stevenson did not appear in the Barton County District Court on his Ellis County warrant. Although he was arrested in Reno County on both Ellis County and Barton County warrants, the Barton County District Court had the authority to resolve only the Barton County charges and warrants, not the ones from Ellis County. See *State v. Hartman*, 27 Kan. App. 2d 98, 101, 998 P.2d 128 (2000) (Sedgwick County had no ability to remove defendant from Cowley County and have him appear before Sedgwick County court).

Second, if Stevenson is correct, the State and Ellis County would be in an impossible position because once Stevenson appeared before the Barton County District Court, the Ellis County authorities would have had only 90 days to bring Stevenson to trial even though they had no authority to bring that about as long Stevenson remained in Barton County's custody. That makes no sense.

Applying the plain language of K.S.A. 2019 Supp. 22-3402(d) to the facts, it becomes clear there is no statutory speedy trial violation here. Stevenson's trial in Ellis County was originally set for January 26 and 27, 2016, which was within the time limitation prescribed. See K.S.A. 2019 Supp. 22-3402(b). He then failed to appear for his scheduled pretrial hearing, so the Ellis County District Court issued a bench warrant. After Stevenson resolved his Barton County cases, he was released on November 22, 2017, and was again served with the Ellis County warrant on November 25, 2017. On November 27, 2017, Stevenson appeared before the Ellis County District Court on the bench warrant ordered in the present case. At that appearance his trial was rescheduled for February 20, 2018, 86 days from the date Stevenson appeared in court on the bench

13

warrant issued in the instant case. Thus, Stevenson was brought to trial within 90 days after he appeared in court on his Ellis County bench warrant, as required by K.S.A. 2019 Supp. 22-3402(d).

Stevenson's statutory speedy trial rights were not violated.

II.    IS STEVENSON'S CRIMINAL THREAT CONVICTION UNCONSTITUTIONAL?

Second, Stevenson argues his criminal threat conviction must be reversed because the statute under which he was convicted is unconstitutionally overbroad. A statute's constitutionality is a question of law subject to unlimited review. *State v. Boettger*, 310 Kan. 800, 803, 450 P.3d 805 (2019), *cert. denied* 140 S. Ct. 1956 (2020).

Stevenson was convicted of criminal threat in violation of K.S.A. 2015 Supp. 21-5415(a)(1), which reads:

> "(a) A criminal threat is any threat to:
>
> (1) Commit violence communicated with intent to place another in fear, or to cause the evacuation, lock down or disruption in regular, ongoing activities of any building, place of assembly or facility of transportation, or in reckless disregard of the risk of causing such fear or evacuation, lock down or disruption in regular, ongoing activities."

After the briefs were filed in this case, the Kansas Supreme Court issued its opinion in *Boettger*, 310 Kan. at 818-19, holding the "reckless disregard" portion of the criminal threat statute found in K.S.A. 2018 Supp. 21-5415(a)(1) to be unconstitutionally overbroad because it encompassed more than true threats and thus potentially punished constitutionally protected speech. K.S.A. 2018 Supp. 21-5415(a)(1) prohibited any threat to

14

"[c]ommit violence communicated with intent to place another in fear, or to cause the evacuation, lock down or disruption in regular, ongoing activities of any building, place of assembly or facility of transportation, *or in reckless disregard of the risk* of causing such fear or evacuation, lock down or disruption in regular, ongoing activities." (Emphasis added.)

While the *Boettger* court held the 2018 version of reckless criminal threat unconstitutional, Stevenson was convicted under the 2015 version of reckless criminal threat. This difference is immaterial because both statutes in relevant part are the same. Thus, the 2015 version of reckless criminal threat under which Stevenson was convicted is also unconstitutional.

Even though reckless criminal threat was declared unconstitutional after Stevenson's conviction, generally speaking, "when an appellate court decision changes the law, that change acts prospectively and applies only to all cases . . . that are pending on direct review or not yet final on the date of the appellate court decision." *State v. Mitchell*, 297 Kan. 118, Syl. ¶ 3, 298 P.3d 349 (2013). Thus, because the opinion in *Boettger* was issued while Stevenson's case has been on direct appeal, he is entitled to the benefit of this change in the law. See *State v. Spanta*, No. 120,095, 2020 WL 4555808, at *1 (Kan. App. 2020) (unpublished opinion).

Shortly after the filing of *Boettger*, the State filed a letter of additional authority in accordance with Supreme Court Rule 6.09 (2020 Kan. S. Ct. R. 39) and argued that any error here was harmless. On July 15, 2020, our court issued a show cause order requiring the State to show cause why the appeal should not be dismissed in light of *Boettger*. The State responded, and we retained the appeal.

The State argues that any error was harmless because the very language of the threats establishes that Stevenson's threats were intentional, and "[n]o jury would find

15

these threats were anything other than intentionally made with the intent to place another in fear."

This argument is undermined by the Kansas Supreme Court's opinion in *State v. Johnson*, 310 Kan. 835, 450 P.3d 790 (2019) (applying *Boettger*), *cert. denied* 140 S. Ct. 1956 (2020), which has facts very similar to ours and is a companion case to *Boettger*, and was filed on the same day. In *Boettger*, the defendant's conviction was based solely on the reckless disregard provision of the criminal threat statute. In *Johnson*, the State charged the defendant with intentionally or recklessly making a criminal threat, which is what was done here. The jury was instructed on both mental states and was given a verdict form asking it to simply determine if Johnson was guilty of criminal threat. There was no unanimity instruction or language in the verdict form requiring the jury to separately determine whether Johnson acted either intentionally or recklessly. The State's indistinct charging along with the jury instructions and verdict form created an alternative means issue because both mental states were alleged. The *Johnson* court employed the constitutional harmless error analysis to determine if the conviction was to be reversed:

> "A constitutional error is harmless if the State can show 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' [Citations omitted.]" 310 Kan. at 843.

Ultimately, the Kansas Supreme Court reversed Johnson's conviction and remanded the case for a new trial, holding that the State failed to meet the no reasonable possibility standard. In so holding, it relied on four considerations:  (1) "The district court instructed the jury on both forms of criminal threat and accurately recited the [statutory] definitions of 'intentionally' and 'recklessly'"; (2) "neither the jury instructions nor the State's arguments steered the jury toward convicting Johnson based solely on one mental state or the other"; (3) the district judge did not "instruct the jury it had to agree

16

unanimously on whether Johnson acted intentionally or recklessly"; and (4) "the verdict form did not require the jury to make a specific finding." 310 Kan. at 843. Further, the court noted that based on the evidence, it was reasonable the jury "could have believed the [defendant's] statements were made with a reckless disregard for whether they caused fear." 310 Kan. at 844.

The Kansas Supreme Court took the same approach from *Johnson* and applied it in *State v. Lindemuth*, 312 Kan. 12, 470 P.3d 1279 (2020), where the same circumstances existed. First, the district court instructed the jury on both mental states and provided their statutory definitions. Second, neither the jury instruction nor the State's arguments directed the jury towards a conviction based solely on one mental state or the other. Third, although the district court instructed the jury that its agreement on a verdict must be unanimous, the district court did not instruct the jury it must unanimously agree on whether the defendant acted either intentionally or recklessly. Fourth, the verdict form did not indicate if the jury had unanimously concluded the defendant made a criminal threat either intentionally or recklessly. Finally, Lindemuth denied making any threatening statements to the victim; and, based on the evidence presented at trial, a reasonable person could have concluded that Lindemuth recklessly disregarded causing fear in his victim rather than intentionally doing so. Therefore, the trial record provided no basis for the district court to clearly discern whether the jury concluded the State sufficiently proved intentional criminal threat. Given these considerations, our Supreme Court held the State did not met its harmless error burden and, like in *Johnson*, reversed Lindemuth's conviction and remanded the case to the district court. *Lindemuth*, 312 Kan. at 19. *Johnson* and *Lindemuth* compel the same result here.

The factual similarities in *Johnson*, *Lindemuth*, and our case are striking. First, the district court here instructed the jury on both forms of criminal threat but did not provide the statutory definitions of "intentionally" and "recklessly." The jury instructions provided, in part:

17

"To establish this charge, each of the following claims must be proven beyond a reasonable doubt:

"1. The defendant threatened to commit violence and communicated the threat with the intent to place another in fear; to-wit: Taft Yates, or with reckless disregard of the risk of causing such fear."

Second, neither the jury instructions nor the State's arguments steered the jury toward convicting Stevenson solely on one mental state or the other. In fact, during its closing argument the State explicitly argued either mental state was applicable on multiple occasions:

"The evidence presented today is that Mr. Stevenson threatened Chief Yates. He did it either intentionally or with reckless disregard. . . .

. . . .

". . . [E]ither he intended to do it or he did it with reckless disregard . . . .

. . . .

" . . . Mr. Stevenson threatened to commit violence, more than once, and Chief Yates was put in fear. That's it. That's the statute. Either he intended [it], or he did it with reckless disregard. Either way, you have seen the video, you have seen the evidence, you heard Chief Yates."

Third, while the district court did give the jury a general unanimity instruction, it did not instruct the jury it had to agree unanimously on whether Stevenson acted intentionally or recklessly. The jury instruction read: "Your agreement upon a verdict must be unanimous."

18

Fourth, the verdict form did not require the jury to make a specific finding as to whether Stevenson acted intentionally or recklessly. It simply asked the presiding juror to sign indicating either: "We, the jury, find the defendant not guilty of criminal threat," or "We, the jury, find the defendant guilty of criminal threat."

Based on the evidence, it is reasonable that the jury could have believed Stevenson's statements were made with reckless disregard for whether they caused Yates fear. Stevenson testified he was just "talking shit" and "venting" and he did not mean to frighten Yates. Moreover, Stevenson was handcuffed during the encounter. Although Yates testified someone can still do physical harm while handcuffed, such a restraint could have been a factor the jury took into consideration. In *Lindemuth*, our Supreme Court remarked the jury could have believed that Lindemuth "simply spoke in the heat of argument and the result of unthinking rage—more reckless, impulsive bluster than an intentional threat." 312 Kan. at 18. Such "impulsive bluster" is the same type of statements Stevenson testified he made toward Yates, and the jury could have accepted Stevenson's assertion and still found the statements to be reckless criminal threat.

Like in *Johnson* and *Lindemuth*, the trial record here provides no basis for us to discern whether the jury found the State had proved beyond a reasonable doubt that Stevenson committed criminal threat intentionally. Accordingly, we cannot conclude the State met its harmless error burden to show there is no reasonable possibility the error contributed to the verdict. Stevenson's conviction must be reversed.

III.     DOES SUFFICIENT EVIDENCE SUPPORT A CONVICTION OF INTENTIONAL CRIMINAL THREAT?

Third, Stevenson argues insufficient evidence supports his conviction because there was not a specific threat made to Yates.

Although we have already reversed Stevenson's conviction for criminal threat, we are required to address Stevenson's argument that insufficient evidence exists to support his conviction. If sufficient evidence supports a conviction for intentional criminal threat, there is no Double Jeopardy Clause violation and Stevenson may be retried. As our Supreme Court has explained:

"Because we have decided that the prosecutor's misconduct denied Pabst a fair trial, we must also address Pabst's sufficiency of the evidence argument. '[A] reviewing court must consider all of the evidence admitted by the trial court in deciding whether retrial is permissible under the Double Jeopardy Clause.' *Lockhart v. Nelson*, 488 U.S. 33, 41, 109 S. Ct. 285, 102 L. Ed. 2d 265 (1988); see *Burks v. United States*, 437 U.S. 1, 11, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978)." *State v. Pabst*, 268 Kan. 501, 512, 996 P.2d 321 (2000).

In making such a determination, we do not attempt to substitute the jury's role at the retrial; rather, such an analysis is simply to safeguard Stevenson's double jeopardy rights. Our standard of review for this inquiry is well known:

"'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

It is only in rare cases where the testimony "was so incredulous no reasonable fact-finder could find guilt beyond a reasonable doubt" that a guilty verdict will be reversed. *State v. Torres*, 308 Kan. 476, 488, 421 P.3d 733 (2018). Given the jury's guilty verdict on criminal threat, we assume a conviction based upon intentional criminal threat and address the address the sufficiency of the evidence to support that conviction.

20

A review of some of the statements made by Stevenson is helpful:

- "Your ass is gonna get hung for this one."
- "Fuck up my corrections and I'll make your life just as bad as mine."
- "[My lawyer] is going to crawl up your fucking ass and choke you out."
- "Why don't you take your badge and your gun off, mother fucker? I'm gonna hang you by your fucking [inaudible]. I'm serious to fucking God."
- "Take off your fucking badge and your fucking gun and let's go in the back and leave the handcuffs on and I'll fuck you all up. Guarantee it."
- "Take your fucking hands off of me! I don't care if I got fucking handcuffs on or not!"

"[C]riminal threat is any threat to . . . [c]ommit violence communicated with intent to place another in fear . . . ." K.S.A. 2015 Supp. 21-5415(a)(1). "A person acts . . . 'with intent,' with respect to the nature of such person's conduct or to a result of such person's conduct when it is such person's conscious objective or desire to engage in the conduct or cause the result." K.S.A. 2015 Supp. 21-5202(h). A "threat" is made when the statement reveals intent to inflict physical or other harm on another's person or property. *State v. Cope*, 29 Kan. App. 2d 481, 486, 29 P.3d 974 (2001), *rev'd on other grounds* 273 Kan. 642, 44 P.3d 1224 (2002).

Stevenson argues his statements were not threats because they did not directly reference physical harm to Yates and they were idle talk and comments in jest. For support, Stevenson cites to *State v. Williams*, 303 Kan. 750, 761, 368 P.3d 1065 (2016) (statements referenced direct physical harm to specific persons), and *State v. Phelps*, 266 Kan. 185, 196, 967 P.2d 304 (1998) (statements were idle talk and made in jest).

21

But a review of the record on appeal contradicts Stevenson's argument. Just one of Stevenson's statements to Yates—"Take off your fucking badge and your fucking gun and let's go in the back and leave the handcuffs on and I'll fuck you all up. Guarantee it."—is clearly a specific threat to Yates. Yates testified he was in fear from these statements and he "emphatic[ally]" called for backup because in his fear he wanted to make sure the situation did not escalate.

Stevenson essentially asks us to place more credence in his testimony that he was merely "talking shit" than in Yates' testimony that he was fearful. However, we are not permitted to reweigh the evidence. See *Chandler*, 307 Kan. at 668. As there was sufficient evidence for a reasonable juror to find Stevenson guilty of intentional criminal threat, a retrial would not violate Stevenson's double jeopardy rights. The case is remanded to the district court to allow the State to retry Stevenson on intentional criminal threat.

IV.     DID THE DISTRICT COURT ERR IN NOT GIVING A JURY INSTRUCTION ON
         DISORDERLY CONDUCT?

Finally, Stevenson argues the district court erred in not instructing the jury on disorderly conduct because it is a lesser included offense of criminal threat.

When analyzing jury instruction issues, we employ a three-step process:

> "(1) determining whether the appellate court can or should review the issue, *i.e.*, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits of the claim to determine whether error occurred below; and (3) assessing whether the error requires reversal, *i.e.*, whether the error can be deemed harmless." *State v. Williams*, 295 Kan. 506, 510, 286 P.3d 195 (2012).

The "first and third step are interrelated in that whether a party has preserved a jury instruction issue will affect our reversibility inquiry at the third step." *State v. Bolze-Sann*, 302 Kan. 198, 209, 352 P.3d 511 (2015).

Applying the first step to Stevenson's alleged error, there is no dispute he did not request a disorderly conduct instruction. "When a party fails to object to or request a jury instruction at trial, K.S.A. 22-3414(3) limits appellate review to a determination of whether the instruction was clearly erroneous." *State v. Knox*, 301 Kan. 671, 680, 347 P.3d 656 (2015); see K.S.A. 2019 Supp. 22-3414(3).

In determining under the second step whether an error actually occurred, we "consider whether the subject instruction was legally and factually appropriate, employing an unlimited review of the entire record." *Williams*, 295 Kan. 506, Syl. ¶ 4.

At the third step, we assess whether the error requires reversal and "will only reverse the district court if an error occurred and we are '"firmly convinced that the jury would have reached a different verdict had the instruction error not occurred."' *Knox*, 301 Kan. at 680 (quoting *Williams*, 295 Kan. 506, Syl. ¶ 5)." *State v. McLinn*, 307 Kan. 307, 318, 409 P.3d 1 (2018). As the party claiming a clear error, Stevenson has the burden to demonstrate the necessary prejudice. See 307 Kan. at 318.

Whether a particular crime is a lesser included offense of a charged crime is a question of law subject to unlimited review. *State v. Carter*, 54 Kan. App. 2d 34, 37, 395 P.3d 458 (2017).

A lesser included offense is:

"(1) A lesser degree of the same crime, except that there are no lesser degrees of murder in the first degree under subsection (a)(2) of K.S.A. 21-5402, and amendments thereto;

"(2) a crime where all elements of the lesser crime are identical to some of the elements of the crime charged;

"(3) an attempt to commit the crime charged; or

"(4) an attempt to commit a crime defined under paragraph (1) or (2)." K.S.A. 2019 Supp. 21-5109(b).

An instruction on a lesser included crime is legally appropriate. *State v. Plummer*, 295 Kan. 156, 161, 283 P.3d 202 (2012).

A criminal threat, in relevant part, is "any threat to . . . [c]ommit violence communicated with intent to place another in fear . . . ." K.S.A. 2019 Supp. 21-5415(a)(1). On the other hand, disorderly conduct is defined in K.S.A. 2019 Supp. 21-6203:

"(a) Disorderly conduct is one or more of the following acts that the person knows or should know will alarm, anger or disturb others or provoke an assault or other breach of the peace:

(1) Brawling or fighting;

(2) disturbing an assembly, meeting or procession, not unlawful in its character; or

24

(3) using fighting words or engaging in noisy conduct tending reasonably to arouse alarm, anger or resentment in others.

. . . .

"(c) As used in this section, 'fighting words' means words that by their very utterance inflict injury or tend to incite the listener to an immediate breach of the peace."

As Stevenson acknowledges, another panel of this court has held that disorderly conduct is not a lesser included offense of criminal threat. In *State v. Butler*, 25 Kan. App. 2d 35, 40, 956 P.2d 733 (1998), Butler argued the district court failed to instruct the jury on disorderly conduct (then K.S.A. 21-4101) as a lesser included offense of criminal threat (then K.S.A. 21-3419). The State argued criminal threat required the specific intent to terrorize, while disorderly conduct only required the general intent that certain acts would cause alarm, anger, or resentment in others. The State also argued criminal threat did not require the use of obscene or abusive language as was required for disorderly conduct.

Ultimately, the *Butler* panel held the district court did not err in failing to instruct the jury on disorderly conduct: "Disorderly conduct will not usually be a lesser included offense of criminal threat or battery. The elements of disorderly conduct are not all included in the elements of criminal threat." 25 Kan. App. 2d at 40.

Although *Butler* was decided under the previous version of the criminal threat statute, which required "terror" rather than fear, the specific intent remains the same. The current criminal threat statute still requires the specific intent to place another in fear, and the current disorderly threat statute only requires general intent that certain acts will alarm, anger, disturb, or arouse resentment. Similarly, the elements of disorderly conduct are not all included in the elements of criminal

25

threat. In order to commit a criminal threat, there must be a threat to commit violence. Disorderly conduct does not require a threat to commit violence.

Accordingly, we join the panel in *Butler* and conclude disorderly conduct is not a lesser included offense of criminal threat because all the elements of disorderly conduct are not included in the elements of criminal threat. A disorderly conduct jury instruction was not legally appropriate in this case.

Stevenson's conviction for criminal threat is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded with directions.