NOT DESIGNATED FOR PUBLICATION

No. 122,954

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

WILLIAM L. GREINER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID J. KAUFMAN, judge. Opinion filed May 27, 2022. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., HILL and HURST, JJ.

PER CURIAM:  William L. Greiner appeals from his jury conviction of one count of intentional criminal threat stemming from an incident involving a police officer, an illegally parked trailer, and his desire to retrieve his gun. Greiner alleges his conviction should be reversed because:  (1) the jury had insufficient evidence to support his conviction; (2) the district court erred by denying his motion to suppress; and (3) the district court erred by including a jury instruction that limited his ability to assert a defense of self-defense. Only two of Greiner's claims are properly before this court, and

1

this court finds sufficient evidence from which a reasonable jury could convict Greiner of intentional criminal threat and no error in the court's jury instructions. Greiner's conviction is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

On July 25, 2018, while addressing issues of graffiti and blight, Officer Charles Byers of the Wichita Police Department saw a detached trailer belonging to Greiner illegally parked on the street in violation of the city ordinance requiring trailers parked on the street to be attached to a vehicle. Officer Byers knocked on the door of the house the trailer was parked in front of, but when no one answered he left the scene to continue his work. Officer Byers returned about 90 minutes later and put a tow warning sticker on the trailer and then left the scene.

Shortly after leaving, Officer Byers received a call from the police station notifying Officer Byers that the owner of the trailer wanted to talk to him about the tow warning sticker. Officer Byers returned to the location of the trailer and his body video camera recorded the subsequent interaction between himself and Greiner, and is part of the evidence relied upon by the jury at trial and this court on appeal.

When Officer Byers returned to the location of the trailer, he was in a marked patrol vehicle, wearing a tan police uniform with his badge visible, and Greiner was in the street near his trailer sweeping debris from around the trailer. As Officer Byers tried to explain the tow warning sticker, Greiner became upset and argued that he understood the law to allow him to park his detached trailer in the street—and stated he had parked in this manner for several years. Officer Byers attempted to explain the applicable city ordinance and Greiner became more frustrated, raised his voice, and argued the trailer was legally parked on his property.

2

After a few minutes of fruitless attempts at explaining the law, Officer Byers walked toward his car to leave the scene and told Greiner the trailer would be towed in two days if it was not moved. Greiner was obviously upset and was still sweeping the area around the trailer and called Officer Byers an "asswipe." Officer Byers responded by walking back toward Greiner and saying "Okay, see now you're going to get a ticket from me." Officer Byers then walked from the street where the trailer was parked toward Greiner, who was now in his front yard walking toward his porch. Greiner pointed the broom he was holding toward Officer Byers and said, "[y]ou're not allowed on my property. You're officially trespassing." At this point, Greiner was holding a cordless phone in his hand and called 9-1-1, a recording of which is part of the record on appeal. Officer Byers then walked back to his patrol car to issue Greiner a ticket.

Once in his car, Officer Byers decided to forgo the ticket and instead write the violated ordinance number on a piece of paper for Greiner to review himself. Officer Byers exited his police car and walked toward Greiner, who was standing on his front porch on the phone with the 9-1-1 dispatcher, repeatedly yelling at Officer Byers "you are not allowed on my property." Officer Byers asked Greiner to calm down and tried to give him the piece of paper with the city ordinance number on it by approaching Greiner's porch with his hand holding the piece of paper extended toward Greiner. Officer Byers asked Greiner, "Do you want the ordinance or not, sir?" Greiner, talking into his phone, told the 9-1-1 operator "He's on my property right now" and then looked at Officer Byers and said "He's on my—I'm getting my gun" and then entered the doorway of his house.

Officer Byers immediately ran from Greiner's front yard to take cover behind his patrol car and radioed to dispatch, "put me out, put me out." Officer Byers remained behind his patrol car and communicated with dispatch that he was "behind cover" because Greiner said he was going to get a gun. Shortly thereafter Greiner returned to his porch without a weapon, and was arrested without incident.

3

The State charged Greiner with one count of criminal threat. Before Greiner's trial, he filed a motion to suppress evidence, arguing all evidence obtained by Officer Byers, including Greiner's statement that he was getting his gun, should be suppressed because it arose from an unlawful, warrantless seizure of Greiner. Agreeing with the State, the district court denied the motion, relying on *State v. Peterman*, 42 Kan. App. 2d 761, 765-66, 216 P.3d 710 (2009), to find the exclusionary rule did not prohibit use of the evidence.

After a jury trial in which Greiner testified on his behalf, the jury found him guilty of intentional criminal threat and the district court sentenced him to 12 months of probation, with an underlying prison term of nine months. Greiner appealed.

DISCUSSION

On appeal, Greiner argues that (1) the State lacked sufficient evidence to support his conviction for criminal threat; (2) the district court erred in denying his motion to suppress evidence; and (3) the district court erred in its jury instructions. This court will address each allegation in turn.

I.      *Sufficient evidence supports the jury's verdict.*

Greiner argues that the State lacked sufficient evidence to sustain his conviction for criminal threat because it failed to show beyond a reasonable doubt that he made a threat to commit violence, or that he intended to place another in fear. In an appeal challenging the sufficiency of the State's evidence, this court determines whether sufficient evidence exists such that a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. This court reviews the record to determine whether evidence exists that, when viewed in the light more favorable to the State, supports each element of the crime. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018); *State v.*

4

*Kettler*, 229 Kan. 448, 471, 325 P3d 1075 (2014). The relied-upon evidence may be circumstantial, and this court may draw all logical inferences from the evidence that supports the conviction. *Chandler*, 307 Kan. at 669; *State v. Jefferson*, 297 Kan. 1151, 1167, 310 P.3d 331 (2013). In all instances, this court will uphold a conviction so long as "the essential elements of the charge are sustained by any competent evidence." *State v. Van Pham*, 234 Kan. 649, 668, 675 P.2d 848 (1984).

The district court instructed the jury that, in order to establish the charge of criminal threat, the State was required to prove:

"1. The defendant threatened to commit violence and communicated the threat with the intent to place another in fear.

"2. This act occurred on or about the 25th day of July, 2018, in Sedgwick County, Kansas."

This required the State to prove two things–that Greiner: 1) threatened to commit violence; and 2) intended to place Officer Byers in fear with his threat.

Greiner argues that his statement, "I'm getting my gun" was not a threat of violence—but merely a statement about going inside to get a gun. Greiner argues it was not a threat because he never said he was coming back outside with the gun, or that he intended to shoot Officer Byers with the gun. Greiner argues that while at the scene during the fractious interaction, Officer Byers falsely claimed to other officers that Greiner said "he was going to go inside and get a gun and come back out at me," and that Greiner "tried to come out and shoot me." Greiner claims that these statements by Officer Byers are what led the jury to believe Greiner threatened violence. However, at trial Officer Byers clearly testified that he never saw Greiner with, or holding, a gun and that Greiner never said he was coming back outside with the gun. Moreover, Greiner testified that he never retrieved a gun and he did not even own a gun. The jury had ample

5

evidence that Greiner never said he was returning outside with a gun, that he never expressly stated he was going to shoot Officer Byers, and that he never displayed a gun to Officer Byers.

   a. *Greiner threatened to commit violence.*

The first issue then, is whether the jury had sufficient evidence to prove that Greiner threatened to commit violence. A "threat" is "a communicated intent to inflict physical or other harm on any person or on property." K.S.A. 2020 Supp. 21-5111(ff); see *State v. Stevenson*, 59 Kan. App. 2d 49, 65, 478 P.3d 781 (2020). A person acts with intent to threaten "when it is such person's conscious objective or desire to engage in the conduct or cause the result." K.S.A. 2020 Supp. 21-5202(h). A person's intent to threaten violence can be inferred from the circumstances surrounding the threat. See e.g., *State v. Johnson*, 310 Kan. 835, 841, 450 P.3d 790 (2019) (using the surrounding circumstances to determine if Johnson committed an intentional threat and remanding to determine if the conviction still stands in light of *State v. Boettger*, 310 Kan. 800, 450 P.3d 805 [2019]); *State v. Williams*, 303 Kan. 750, 762-63, 368 P.3d 1065 (2016) (affirming Williams' conviction after finding sufficient evidence of intentional criminal threat).

It is undisputed that Greiner communicated within Officer Byers' hearing range, "I'm getting my gun." This was communicated during a contentious interaction with Officer Byers after Greiner had raised his voice at Officer Byers, contested Officer Byers' assertion that Greiner's trailer was illegally parked, Greiner called Officer Byers an "asswipe," and Greiner repeatedly yelled at Officer Byers to get off his property and accused him of trespassing. While Greiner was on his porch, Officer Byers approached and Greiner yelled several times "you are not allowed on my property" as Greiner pointed his finger at Officer Byers. Then, as Officer Byers raised his right hand and asked Greiner if he wanted the piece of paper containing the city ordinance Greiner had

6

violated, Greiner looked directly at Officer Byers and said, "I'm getting my gun," as he quickly went inside his home. At that time Officer Byers ran to his patrol car, took cover, and called for assistance.

Greiner attempts to detach his statement, "I'm getting my gun," from the surrounding circumstances and his other statements—as though he and Officer Byers were having a pleasant conversation at the time—but this court cannot ignore the circumstances of his statement. See e.g., *Johnson*, 310 Kan. at 840-41 (using statements and surrounding circumstances to establish intentional criminal threat); *Williams*, 303 Kan. at 762-63 (permitting inferences to support a conviction for intentional criminal threat). At the time Greiner threatened to get his gun, he was also yelling at Officer Byers to get off his property and accusing him of breaking the law. Greiner was also on the phone with 9-1-1 reporting Officer Byers as a trespasser who refused to leave. He reported to the police dispatcher that Officer Byers was "breaking the law" and stated that "I'm in danger yes, he has a gun, he is threatening me, and he's not allowed on my property."

Greiner's threat to get his gun was directly related to, and resulting from, his indignation that Officer Byers was on his property despite being told to leave. Officer Byers was contemporaneously aware of Greiner's threat and the surrounding circumstances. He knew Greiner was calling 9-1-1, and Greiner's stated belief that Officer Byers was trespassing. In *Williams*, the Kansas Supreme Court upheld a criminal threat conviction when the target of the threat did not hear the threat from the person who made it and was not contemporaneously present when the threat was made. 303 Kan. at 761. Greiner asserts that because he never said he was going to bring the gun outside or use the gun to shoot Officer Byers—his statement was not a threat of violence. However– this court cannot reweigh the evidence or substitute its judgment for that of the jury–and must review the evidence in a light more favorable to the State. See *Chandler*, 307 Kan. at 668. Given the totality of the evidence and circumstances surrounding Greiner's

7

statement that "I'm getting my gun"—this court cannot say the jury was without sufficient evidence, including logical inferences, for a rational fact-finder to find beyond a reasonable doubt that Greiner intended to, and did, threaten violence against Officer Byers.

II. *The district court did not violate Greiner's due process rights.*

In addition to his sufficiency of the evidence argument, Greiner raises two alleged violations of his constitutional due process rights:  first, that the district court erred by denying his motion to suppress evidence, including his statement that he was getting his gun, and second, that the district court erred by including a jury instruction explaining the inapplicability of a claim of self-defense to the lawful conduct of police officers. Both arguments fail.

a. *Greiner failed to preserve his claim for erroneous admission of evidence.*

First, Greiner couches an objection to the admission of evidence as a due process claim by alleging that he was wrongly detained and thus his statements during that detention cannot be used at trial. Greiner filed a pretrial motion to suppress evidence from the interaction with Officer Byers, including his statement, "I'm getting my gun," and after an evidentiary hearing the district court denied the motion. However, Greiner failed to object to the admission of the evidence at trial, which generally prohibits appellate review of the issue absent an applicable exception. See K.S.A. 60-404 (requiring contemporaneous objection to admission of evidence); *State v. Potts*, 304 Kan. 687, 700, 374 P.3d 639 (2016) (declining to address an objection to admitted evidence when the defendant failed to contemporaneously object at trial even when the defendant had filed a pretrial motion to suppress that the district court denied).

As Greiner points out, this court may elect to decide a constitutional claim raised for the first time on appeal if the claim meets one of three well-known exceptions. Greiner argues that his claim meets two exceptions—that it involves a question of law arising on proved or admitted facts that is finally determinative of the case, and that its consideration is necessary to serve the ends of justice or to prevent denial of fundamental rights. See *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019) (explaining the three exceptions to the general prohibition against hearing a constitutional issue for the first time on appeal). Although Greiner frames his issue as one of constitutional due process—it is an evidentiary objection—and even if the evidentiary objection raises constitutional issues, it is properly precluded from appellate review by Greiner's failure to object at trial. See *State v. Solis*, 305 Kan. 55, 63-64, 378 P.3d 532 (2016) (refusing to hear an evidentiary claim alleged to implicate due process when the defendant failed to timely object at trial). Moreover, the Kansas Supreme Court has consistently declined to extend the caselaw exceptions argued by Greiner to circumvent the legislative mandate of K.S.A. 60-404. *Solis*, 305 Kan. at 63 (The Kansas Supreme Court has "refused to allow the contemporaneous objection rule to be circumvented by the caselaw exception that is designed to serve the ends of justice or prevent a denial of a fundamental right."). However facile Greiner's argument, his claim that the district court erroneously admitted evidence from Officer Byers is not preserved for appeal, and the district court's denial of his pretrial motion to suppress is affirmed.

b. *The district court did not err in its jury instruction.*

Greiner next argues that the district court violated his due process right to present a complete defense by including language in the jury instructions that limited his ability to raise a self-defense argument. The State counters that the instruction was legally and factually appropriate, but if not, any error was harmless. This court follows a four-step process when reviewing alleged error in jury instructions:  (1) it exercises unlimited review in determining the reviewability of the issue–that is, whether the court has

9

jurisdiction and whether the issue is properly preserved; (2) it exercises "unlimited review to determine whether the instruction was legally appropriate"; (3) it determines whether there was sufficient evidence to support the instruction; and finally (4) if this court finds an error, it "must determine whether the error was harmless." *State v. Perez-Medina*, 310 Kan. 525, 533, 448 P.3d 446 (2019).

As to the first step, the State does not allege this court lacks jurisdiction or that Greiner failed to preserve this issue for appeal. At trial, the State wanted to use the entire PIK Crim. 4th 52.280 (2012 Supp.), which includes language prohibiting a defendant from arguing self-defense when resisting arrest by a law enforcement officer. The challenged instruction stated:

> "A person is not authorized to assert the defense of self-defense of the person or the person's property as a defense to the commission of the crime of criminal threat when the person commits the criminal threat against a police officer while the police officer is lawfully performing his duties, even if the person believes the police officer is not performing his duties lawfully."

Greiner acknowledges that the challenged instruction was drafted based on PIK Crim. 4th 52.280, which provides:

> "A person is not authorized to use physical force, threaten to use physical force, [or] display a means of force to resist an arrest which he knows is being made by a law enforcement officer even if the person believes that the arrest is unlawful, and the arrest is, in fact, unlawful."

Greiner's counsel objected to this instruction, stating, "[I]t's my position that . . . this instruction muddies the waters to what this jury's looking at, whether or not a true criminal threat took place." Greiner preserved this issue for appeal and this court has jurisdiction over this question.

For the second step, this court exercises unlimited review to determine if the challenged instruction is legally appropriate, which means it "must always fairly and accurately state the applicable law." *State v. Kleypas*, 305 Kan. 224, 302, 382 P.3d 373 (2016); *Perez-Medina*, 310 Kan. at 533. Greiner contends the challenged jury instruction is legally inappropriate, although not legally inaccurate, because it denied him the right to "a meaningful opportunity to present a complete defense," as it "prevented the jury from considering the question of whether Mr. Greiner's actions were reasonable and justified if [Officer] Byers was not acting within his lawful authority."

The challenged jury instruction conforms to Kansas self-defense statutes which provide that a person may use force when they "reasonably believe[] that such use of force is necessary to defend such person or a third person against such other's imminent use of *unlawful* force," (K.S.A. 2020 Supp. 21-5222[a]), or when that person "reasonably believes that such use of force is necessary to prevent or terminate such other's *unlawful* entry into or attack upon such person's dwelling . . . . " (Emphases added.) K.S.A. 2020 Supp. 21-5223(a). While discussing the jury instructions, Greiner's counsel told the district court, ". . . specifically I haven't raised the self-defense argument, I don't intend to raise it on closing, either." And when the court sought clarity and asked, "you are not seeking those instructions because you just told me this isn't a self-defense case," Greiner's counsel confirmed, "[t]hat's right. I'm not, Your Honor." Greiner did not ultimately request any jury instructions on self-defense or defense of a dwelling as a defense to his criminal threat charge. But Greiner now argues that he was entitled to allow the jury to consider self-defense as a defense because Officer Byers' actions were unlawful—which appears inapposite from his statements to the district court. What Greiner actually wants is to present—and permit the jury to consider—self-defense and defense of dwelling as a legal defense without providing any legal authority supporting the defense.

11

The challenged jury instruction simply states that a person cannot assert self-defense against a police officer's actions when the officer is lawfully performing their duties. There can be no dispute that the challenged jury instruction fairly and accurately states the applicable law. In fact, the challenged jury instructions only applied to *lawful* police conduct, so to the extent Greiner hoped the jury believed Officer Byers' conduct was unlawful—he may have received the benefit of an inference that self-defense would have applied in such a case. The jury instruction did not prevent Greiner from making his arguments at trial, it merely accurately articulated the applicable law.

The third step requires this court to determine if the challenged instruction was factually appropriate—that is, whether there was sufficient evidence viewed in the light favoring the requesting party, in this case the State, to support the instruction. *Perez-Medina*, 310 Kan. at 533. Before trial, Greiner submitted proposed jury instructions that included PIK 51.050 (2020 Supp.), an instruction which referenced the assertion of self-defense and defense of a dwelling. At a pretrial hearing, Greiner's counsel stated that "the fact that Mr. Greiner owned this property and felt his property was invaded is relevant to a self-defense argument." In response to the State's assertion that Greiner was not legally entitled to claim self-defense under the circumstances, the court stated it would permit the defense to present its case and would determine the appropriate instructions after viewing the evidence presented at trial.

After the close of evidence, the district court added the now-challenged jury instruction because Greiner had testified that he was "within [his] legal right" to get a gun because he believed Officer Byers was a trespasser. Although Greiner's counsel stated, in opposing the jury instruction, that he did not intend to raise self-defense as a defense in his closing arguments—Greiner had already placed the issue before the jury. When asked why it was necessary to tell Officer Byers that he was getting his gun, Greiner testified, "[a]t that point, he was a trespasser and he was coming at me with what I felt was a gun. I felt my life was on the line." He also testified that "it is within my legal right" to get a

12

gun "because [Officer Byers] is a trespasser at this point." Greiner clearly placed the issue of his legal authority to defend himself and his property from Officer Byers at issue in the trial. An instruction is factually appropriate if it "is supported by the particular facts of the case." *Kleypas*, 305 Kan. at 227. The challenged jury instruction is factually appropriate because Greiner put forth facts alleging Officer Byers acted illegally and thus Greiner believed he had a right to defend himself.

Because the challenged jury instruction is legally and factually appropriate, the district court did not err and this court's inquiry into Greiner's claim ends.

CONCLUSION

There is sufficient evidence to support Greiner's conviction for criminal threat, and the district court did not err in the jury instructions. Greiner failed to preserve his objection to the district court's denial of his motion to suppress. The district court is affirmed.

Affirmed.

13